## Gibson, Appellant, *v.* Bruner.

Argued March 15, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

316

*Carmen V. Marinaro,* for appellant.

*Richard B. Kirkpatrick,* with him *Luther C. Braham, Darrell L. Gregg, Norman D. Jaffe,* and *Galbreath, Braham, Gregg, Kirkpatrick & Jaffe,* and *Marshall, Marshall & McNamee,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, July 17, 1961:

At approximately 8:10 p.m. on October 30, 1948, Lester A. Gibson and Loretta A. Gibson, his wife, were travelling south in an automobile on Route 68 toward Butler, Pa. Proceeding north on the same highway toward Chicora, Pa. was a pick-up truck operated by Edward Bruner, aged 26 years. At a point on Route 68 approximately seven miles north of Butler the two motor vehicles met in a head-on collision in the south-

bound lane of traffic. As a result of injuries sustained in the collision, Mr. Gibson died on December 18, 1948 and Mrs. Gibson received serious and permanent injuries.

At the time of the accident Edward Bruner was visibly intoxicated. There is little, if any, doubt that he was responsible for this tragic occurrence.

In the Court of Common Pleas of Butler County, Mrs. Gibson, as administratrix of her deceased husband's estate, instituted a survival and wrongful death action and, in her own right, an action for her injuries. The defendants were Edward Bruner, driver of the truck; Hilliard Lumber Company (Company), the owner of the truck; Bernard Bruner, Edward Bruner's father and an employee of the Company into whose possession and control the Company had delivered the truck.

All actions came to trial before the Honorable CLYDE SHUMAKER and a jury. At the close of plaintiff's case, the court granted a compulsory nonsuit as to the Company. At the close of the trial the jury awarded three verdicts against both Edward Bruner and Bernard Bruner; a verdict in favor of Mrs. Gibson, in her own right, of $13,500, verdicts in favor of Mrs. Gibson, as administratrix, of $2500 in the survival action and $5000 in the wrongful death action. After motions for removal of the nonsuit, new trial and judgment n.o.v. by the respective parties, the court below refused to take off the compulsory nonsuit and entered judgment for the Company, entered judgment n.o.v. in favor of Bernard Bruner and judgment on the verdict against Edward Bruner.

Mrs. Gibson then filed *one* appeal (No. 65 March Term 1961) to this Court from the judgments entered. During oral argument, Mrs. Gibson's counsel was reminded that the single appeal was incapable of bringing up for review more than one judgment (*Frailey Town-*

*ship School District v. Schuylkill Mining Company,* 361 Pa. 557, 560, 64 A. 2d 788; *Dommes v. Zuroski,* 350 Pa. 206, 207, 38 A. 2d 73; *Jordan v. Eisele,* 273 Pa. 95, 98, 116 A. 675). Rather than quash the appeal, counsel was requested to choose which judgment he desired the Court to determine; he then chose the judgment for Bernard Bruner. Hence, we consider this appeal solely in connection with the entry of judgment n.o.v. in favor of Bernard Bruner and the judgment in favor of the Company remains undisturbed.

It is the position of Mrs. Gibson that there is sufficient evidence on this record from which the jury could find that Bernard Bruner was negligent in permitting his son, Edward Bruner, to use and operate the Company's truck, well knowing that he was intoxicated at the time. It is Bernard Bruner's contention that the record lacks any facts upon which liability on his part could be predicated. We must, therefore, examine the record to ascertain whether Bernard Bruner gave his adult son permission to take and operate the truck with knowledge that at the time Edward Bruner was intoxicated and not in condition to safely operate the truck.

On the afternoon of October 30, 1948, it was necessary that Bernard Bruner, in the course of his employment as the Company's sub-foreman, proceed to Butler to pick up in the Company's truck certain supplies needed at a construction project near Deshon, located outside Butler. Edward Bruner, who worked at the Butler Iron Company in Butler and was an across-the-road neighbor of his father, asked his father if he could accompany him to Butler to pick up his pay check to which request the father acceded. After picking up the supplies and pay check, both Bruners proceeded to the Deshon project. It was raining and, after unloading the supplies, Bernard Bruner volunteered to drive one Salwash and Kline, workmen at the project, to their respective homes. Enroute the foursome stopped at a

tavern where, according to Bernard Bruner, he had two glasses of beer and his son one or two bottles of beer. Bernard Bruner then drove Salwash to his home and the remaining trio went to Kline's home. Enroute and at Kline's insistence, a stop was made at a beer distributors's place of business where Kline purchased a case of beer. They then proceeded to Kline's home which was approximately a mile from Bernard Bruner's home. Bernard Bruner parked the truck near Kline's home, leaving the keys in the ignition. The trio then entered Kline's home where they remained for some time.

Bernard Bruner testified that, while at Kline's home, he had one bottle of beer and his son, Edward Bruner, one, or, possibly two, bottles of beer. Edward Bruner stated they had a "couple of beers".

At approximately 5:30 p.m. Edward Bruner took the truck and proceeded to Chicora, via Butler. Edward Bruner stopped at two taverns in Butler, and, according to his testimony, had a bottle of beer in each tavern and purchased 12 bottles of beer which he put in the truck. *Two hours and forty minutes after leaving Kline's home and 21 miles therefrom, this tragic accident occurred.*

At trial, Corporal Poloskey, a state policeman, stated that Edward Bruner had told him that he had been given permission to use the truck.[1] In the course of his investigation, this officer questioned Bernard Bruner and, according to the officer's testimony, Bernard Bruner said "that the boy took it without his permission. *He told him to take it [the truck] home and leave it there"*. (Emphasis supplied)

At trial, both Bruners denied making these statements to the officer and both testified the truck was taken without the permission of Bernard Bruner. According to Bernard Bruner, he had no knowledge that

---

[1] This testimony, admissible against Edward Bruner, was not admissible against Bernard Bruner.

the truck had been taken by his son until Kline, who had gone with Edward Bruner to an outside toilet, returned and told him the son had taken the truck.[2] Bernard Bruner, surprised his son had taken the truck, testified he did nothing about it at the time assuming the son would drive it to his, Bernard Bruner's, home and leave it at that place. About 15 minutes after the truck was taken, Bernard Bruner went to his home and discovered the truck was not there. About 6:30 p.m. he reported to the state police that the truck was missing and, later in the evening, called his employer informing him what had taken place. Bernard Bruner was informed later that evening of the accident by Corporal Poloskey.

In passing upon this appeal, we view the evidence and all reasonable inferences therefrom in the light most favorable to Mrs. Gibson. So viewing the evidence, we reject the version of taking possession of the truck as related by both Bruners and accept the version of Corporal Poloskey that Edward Bruner took the truck with the permission of Bernard Bruner. In so doing, we must also accept Corporal Poloskey's testimony that the permission was not general but expressly restricted, "take it home and leave it there". Granting full acceptance to such testimony, the undisputed fact is that Edward Bruner did not take the truck to his father's home but proceeded to Chicora and was 21 miles from his father's home when the accident occurred. Such conduct constituted a substantial deviation from the authorized and permitted use and the record is clear that when the accident occurred Edward Bruner was clearly on a frolic of his own. See: *Exner v. Safeco Ins. Co. of America*, 402 Pa. 473, 167 A. 2d 703 and cases therein cited.

---

[2] Edward Bruner at trial corroborated this version of taking the truck.

Under such uncontradicted facts Bernard Bruner would not be liable for his son's transgressions *unless* he knew when he permitted Edward Bruner to take the truck that, by reason of intoxication, he was unfit to drive the truck or, by reason of such condition, he would or might disregard the instructions to take the truck home and instead take the truck elsewhere and continue drinking. Unfortunately for Mrs. Gibson, the record does not indicate any such evidence. The only evidence upon which Mrs. Gibson can rely to supply this necessary proof is Bernard Bruner's testimony that he called the state police because ". . . he [Edward Bruner] wasn't in condition". Standing alone, such testimony *might* support Mrs. Gibson's position. However, an examination of this statement indicates that it is taken out of context. Eight questions later Mrs. Gibson's counsel clarified the situation: "Q. How much of your concern was due to the fact that you knew [Edward] had been drinking? A. He wasn't drinking that much as far as that's concerned when he left there, now, after that what happened, I don't know, I wasn't there". *There is no evidence that when Edward Bruner left his father's presence in Kline's home he was intoxicated or not in a condition to drive a motor vehicle.*

The burden was upon Mrs. Gibson, seeking to impose liability on Bernard Bruner, to prove that when Edward Bruner left Kline's home he was not in a condition to operate a motor vehicle. This she failed to prove. Mrs. Gibson relied for such proof upon Bernard Bruner and his testimony falls far short of proving his son was intoxicated *at the time* permission to operate the truck was given. Had she sought such proof from Kline or the bartenders and patrons of the taverns in Butler she might have sustained her burden of proof.

There is not the slightest doubt that at 8:10 p.m.— two hours and forty minutes *after* he left his father's presence—Edward Bruner was visibly intoxicated, yet

as the court below stated, ". . . there is not one scintilla of evidence that he was such when he left the presence of his father. Indeed, the positive evidence is to the contrary on this point." There was testimony that up until 5:30 p.m. when he left his father's presence he had four bottles of beer. Such testimony does not prove that *at that time* he was unfit to operate the truck. That Edward Bruner was visibly intoxicated two hours and forty minutes later—especially, in the face of uncontradicted evidence that he had visited two taverns in the meantime—does not justify a finding he was intoxicated when he left his father's presence. To permit a jury to infer that his intoxication at the scene of accident was indicative of a condition of intoxication when he left Kline's home is to permit conjecture and speculation which we cannot allow. Mrs. Gibson failed to sustain her burden of proof as to Bernard Bruner's vicarious liability.

The court below, under this record, acted with propriety in entering judgment n.o.v. as to Bernard Bruner.

Judgment affirmed.