530 A.2d 534

Rodger W. Robare and Patricia Robare, Co-Administrators of the Estate of Rodger C. Robare, Deceased, and Herbert McClain and Mary Ann McClain, Co-Administrators of the Estate of Stephen McClain, Deceased, Appellants *v.* Donna Pekarcik, Nicholas Nigro, and Commonwealth of Pennsylvania, Appellees.

Donna Pekarcik, Appellant *v.* Rodger W. Robare and Patricia Robare, Co-Administrators of the Estate of Rodger C. Robare, et al., Appellees.

Argued May 21, 1987, before Judges MacPhail and Colins, and Senior Judge Narick, sitting as a panel of three.

*Arthur Cutruzzula, Maurizi & Cutruzzula,* for appellants/appellees, Rodger W. and Patricia Robare, and Herbert and Mary Ann McClain.

*Harry S. Cohen, Fingeret, Pollock, Cohen and Zavarella,* for appellee/appellant, Donna Pekarcik.

*Daniel J. Weis, Weis & Weis,* for appellee, Nicholas Nigro.

Opinion by Senior Judge Narick, September 2, 1987:

The following parties were involved in a jury trial giving rise to the two appeals before us: Rodger W. and

Patricia Robare, as co-administrators of the estate of Rodger C. Robare, and Herbert and Mary Ann McClain, as co-administrators of the estate of Stephen McClain, sued Donna Pekarcik, Nicholas Nigro, and the Commonwealth of Pennsylvania, Department of Transportation as a result of an automobile accident in which Rodger C. Robare and Stephen McClain were killed.

Following the conclusion of the plaintiffs' case, the trial judge, upon motion, entered a compulsory non-suit in favor of defendant, Nicholas Nigro. The Robares and the McClains have appealed from the trial court's denial of their post-trial motions to remove the non-suit and grant a new trial as to defendant Nigro on the issue of liability.

The jury returned a verdict for each plaintiff's estate in the amount of $565,000, (later molded to a higher sum), against defendant Pekarcik only. Pekarcik has appealed from the dismissal of her motion for post-trial relief requesting a new trial because the verdict was against the weight of the evidence.

A brief summary of the facts would be helpful before we address the specific grounds for these appeals. On the evening of the accident, July 31, 1981, Donna Pekarcik and her boyfriend, Nicholas Nigro, went to a bar at about 9:30 p.m., where they drank two or three alcoholic beverages. They then went to a party at a friend's apartment, where Pekarcik drank a few glasses of beer. At about 12:30, Frank Tarkowski asked Nigro to move his truck, a 1979 Ram Charger, which was blocking Tarkowski's vehicle. Nigro told him to ask Pekarcik to move it, or to do so himself as the vehicle was unlocked, and the keys were in the visor. Tarkowski asked Pekarcik to do it.

After she had moved the truck, Pekarcik decided to drive to another bar to see if some friends were there. When she reached the parking lot, she did not recog-

nize any of the cars, and decided not to go in. Instead, she exited from the parking lot by turning left onto the two southbound lanes of East Pittsburgh/McKeesport Boulevard. Several "Do Not Enter" signs were missing at the point of her entry onto the boulevard, a four-lane divided highway, and a hill obstructed the view of the northbound lanes. She was proceeding north in the southbound lanes when she collided head-on with the 1972 Ford Pinto occupied by Rodger C. Robare and Stephen McClain, both of whom were killed.

Pekarcik was arrested at the scene for driving while intoxicated. A breathalyzer test administered approximately one hour after the accident, which occurred at 12:58 a.m. on August 1, 1981, revealed her to be legally intoxicated with an initial blood-alcohol level of .15. A second test, some ten minutes later, registered a .16 reading.

We turn first to the issues raised by the Robares and McClains in their request to remove the non-suit in favor of Nigro. We are mindful that a non-suit is only to be entered against a plaintiff " 'when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the plaintiff, could determine in his favor the controlling issues involved.' " *Francis v. Henry,* 399 Pa. 369, 371, 160 A.2d 455, 456 (1960) (citation omitted).

The Robares and McClains proceeded upon the theory of negligent entrustment with respect to Nigro, claiming that he knew, or should have known, when he instructed Pekarcik to move his truck, that she was intoxicated, and, therefore, incompetent to drive. This theory of recovery is based primarily upon the language of three of our Supreme Court cases: *Anderson v. Bushong Pontiac Co.,* 404 Pa. 382, 171 A.2d 771 (1961);

*Gibson v. Bruner,* 406 Pa. 315, 178 A.2d 145 (1961); and *Glass v. Freeman,* 430 Pa. 21, 240 A.2d 825 (1968).

The trial court found *Gibson* to be controlling, and we agree. In *Gibson,* a father, Bernard Bruner, and his son, Edward were returning from the father's workplace in a truck belonging to the father's employer. They were taking two fellow employees home, and made two stops en route, where the uncontroverted evidence established that the son drank between two to four beers. While the father denied allowing the son to use the truck, the court construed contradictory evidence of record against him and concluded that the father had given permission to the son to take the truck home. However, the court did not find any evidence to support plaintiff's position that Bernard Bruner knew his son was intoxicated, stating:

> Under such uncontradicted facts Bernard Bruner would not be liable for his son's transgressions *unless* he knew when he permitted Edward Bruner to take the truck that, by reason of intoxication, he was unfit to drive the truck or, by reason of such condition, he would or might disregard the instructions to take the truck home and instead take the truck elsewhere and continue drinking. Unfortunately for Mrs. Gibson [plaintiff], the record does not indicate any such evidence.

*    *    *    *

The burden was upon Mrs. Gibson, seeking to impose liability on Bernard Bruner, to prove that when Edward Bruner left Kline's home he was not in a condition to operate a motor vehicle. This she failed to prove. Mrs. Gibson relied for such proof upon Bernard Bruner and his testimony falls far short of proving his son was intoxicated *at the time* permission to operate the

truck was given. Had she sought such proof from Kline or the bartenders and patrons of the taverns in Butler she might have sustained her burden of proof.

*Gibson,* 406 Pa. at 321, 178 A.2d at 148 (emphasis in original).

These Appellants attempt to distinguish *Gibson* on the grounds that Pekarcik, unlike the son in *Gibson* who continued to drink after he took the truck off on a frolic of his own, did not have any more to drink after she left the party. Therefore, they contend she was drunk when Nigro permitted her to use the truck, which is evidence of negligence on his part.

The trial judge found, and we agree, that the evidence adduced does not support this proposition. Pekarcik and Nigro were the only ones to testify regarding what happened at the party. Like the plaintiff in *Gibson,* these Appellants could have sought the testimony of the other party-goers in order to elicit the required proof: that Pekarcik was intoxicated when she was given permission to move the vehicle. This they failed to do. Accordingly, there is no evidence to establish that Nigro had even spoken to Pekarcik for at least one hour before she left the party. He did not instruct her to move the vehicle himself, and there was nothing to indicate that he knew she was intoxicated. These Appellants argue that this knowledge should be imputed to Nigro, relying on *Anderson* and *Glass.* However, those cases are distinguishable.

In *Anderson,* a 14-year old stole a car from a parking lot and subsequently injured a pedestrian. The parking lot owner was held to be liable because the evidence indicated that the keys to the vehicle had been stolen two days earlier, and, although the theft was reported to the police, no precautions were taken to ensure that the vehicle would not be stolen. In addition, it was shown

that children frequented the lot. These two. factors led the court to conclude that it was foreseeable that an incompetent driver would steal the car.

In *Liney v. Chestnut Motors, Inc.*, 421 Pa. 26, 218 A.2d 336 (1966), the court refused to apply *Anderson* to a similar situation, noting that the defendant in *Anderson* was not only on notice that the car was likely to be stolen, but that it was likely to be stolen and operated by an incompetent driver. In *Liney,* a customer's car, left outside a repair shop with the keys in it, was stolen. The thief injured a pedestrian. In refusing to impute liability, the court held that there was nothing to put the defendant on notice that an incompetent or careless driver would steal the car.

In *Glass,* the court was again faced with a situation in which a minor was presented with a temptation: a tractor which his father left unattended and running. The father was held liable for the injuries caused by the boy because it was foreseeable that the youngster would operate the vehicle.

Appellants argue that they are entitled to the reasonable inferences deducible from their evidence. They conclude, because of the small size of the party, that Nigro had the opportunity to observe Pekarcik, and that, along with his knowledge that she had been drinking, would be sufficient to establish that he knew or should have known she was drunk. As noted above, however, the *Gibson* court required evidence that the son was intoxicated, or that the father knew he was intoxicated. *Anderson* and *Glass* are inapplicable, because the defendants in those cases failed to consider the actions of incompetents known to be in the vicinity.

We have carefully reviewed the record, and must agree with the trial judge that there is simply no evidence that Nigro knew that Pekarcik was intoxicated when he indicated to Tarkowski that she could move his

truck. That she was later proven to be such is not controlling for purposes of imputing liability to Nigro. Accordingly, the entry of the non-suit was appropriate, and we affirm the order of the trial judge denying a new trial on the theory of negligent entrustment.

The second issue to be resolved is whether the trial court properly refused Pekarcik's request for a new trial. The crux of her argument is that the Department of Transportation shares the blame for this tragic accident, as the evidence established that no fewer than four signs were missing, which indicated that the road Pekarcik traveled was one way, that the Department had been notified that the signs were not in place, and that at least one other similar accident had resulted. Pekarcik argues that, in finding her alone liable, the jury disregarded the weight of the evidence.

We note initially that the decision of whether or not to grant a new trial is within the discretion of the trial court judge. *Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985); *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 265 A.2d 516 (1970). We must determine whether that court has acted capriciously or palpably abused its discretion. *Burrell.*

'A new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion: [citation omitted]. Neither should it ordinarily be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the jury might have found for either party.' Carroll v. Pittsburgh, 368 Pa. 436, 445-6, 84 A.2d 505 (1951). A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock

one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Jones v. Williams, 358 Pa. 559, 564, 58 A.2d 57; Carroll v. Pittsburgh, supra, at 447; Brown v. McLean Trucking Co., 434 Pa. 427, 429-30, 256 A.2d 606 (1969).

*Burrell,* 438 Pa. at 289, 265 A.2d at 518.

It is quite obvious from our review of the record that evidence exists which clearly supports the jury's verdict. An eyewitness testified that Pekarcik's vehicle was traveling in the left-hand lane of the two southbound lanes. Had she maintained that position, she would have passed the Pinto, traveling in the right-hand lane, without incident. However, she swerved into the right lane at the last moment, and struck the Pinto. From this evidence alone, the jury could easily find that Pekarcik's negligence was the sole cause of the accident. While evidence exists to contradict that conclusion, the trial judge properly determined that it was within the province of the jury, as fact finder, to resolve the conflict. Finding no error of law or abuse of discretion, we affirm the trial court's order denying Pekarcik's motion for a new trial.

## ORDER

AND NOW, this 2nd day of September, 1987, the orders of the Court of Common Pleas of Allegheny County, dated March 5, 1986 and March 13, 1986 respectively, are affirmed.

Judge COLINS dissents.