542 A.2d 1019

**Lee WERTZ, Jr. and Fran S. Wertz, His Wife, Appellants,**

**v.**

**Ernest KEPHART, Jr., Robin K. Miller and Joy Brubaker.**

Superior Court of Pennsylvania.

Argued March 16, 1988.

Filed May 25, 1988.

276

Frederick B. Gieg, Altoona, for appellants.

Michael W. Chorazy, Hollidaysburg, for Miller and Brubaker, appellees.

Before TAMILIA, POPOVICH and HOFFMAN, JJ.

TAMILIA, Judge:

On the evening of November 7, 1980, defendant Kephart and appellee Brubaker were at a tavern called Mr. Bill's drinking with some friends. After about an hour at Mr. Bill's, Brubaker and Kephart decided to go to a movie, following which Brubaker called her friend, Robin Miller, who was at John Volovski's apartment, and asked if they could borrow her car even though she did not have a driver's license. Miller apparently asked if Kephart had a license and Brubaker said he did. The two then walked to John Volovski's apartment and stayed approximately 10–15 minutes while they picked up the keys. Miller's only request was they be back by 11:30 p.m. so she could take John to work. After leaving the apartment at approximately 9:30 p.m., Brubaker gave Kephart the keys and he drove the car towards a movie theatre. Despite the fact it was raining that night, Kephart drove very fast and recklessly—so recklessly that Brubaker became frightened and demand-

ed that he stop the car and get out. He finally stopped but instead of him getting out, Brubaker got out and Kephart drove around her, yelling at her to get back in the car and coming close to hitting her with the car. It was about 9:50 p.m. when she ran into a supermarket to call for someone to come pick her up and Kephart drove away. Brubaker also called Miller to tell her what happened and Miller called the police. Kephart drove the car all night and had several beers during that time. The next morning he went to a cafe and had two or three more drafts within 15 minutes. At 3:30 that afternoon Kephart smashed into appellants' car causing it to sail through the air and flip over on its roof, resulting in severe injuries to appellants. Kephart then sped away. A couple, the Schweitzers, were travelling behind Kephart immediately prior to the collision and had noticed his erratic driving. After the collision the Schweitzers decided to follow Kephart even though he was speeding. Eventually both vehicles pulled off the road and Mr. Schweitzer pulled his car right in front of Kephart's so they were facing each other, the cars hood to hood. After observing Kephart for approximately 20 seconds, the Schweitzers pulled behind Kephart's car and got the license number. Mr. Schweitzer called the police while Kephart drove away.

At 9:30 that evening, Trooper Stanek and another officer went to Kephart's residence to question him about the hit and run. After ten minutes of knocking and calling out to him, Kephart opened the door. The officers identified themselves and advised Kephart of his rights. Kephart immediately became belligerent and denied any involvement in the accident. He ordered the officers to leave unless they had a warrant; since they did not have a warrant they left.

Appellants filed suit against Kephart, Miller, Brubaker and two others who received a grant of voluntary nonsuit. The jury returned a verdict for appellants, finding Kephart and appellees Brubaker and Miller negligent. However, they attributed all the causal negligence to Kephart finding

him 100% liable. Appellants filed a motion for post-trial relief which was denied. They appealed to this Court and we quashed sua sponte since it was interlocutory as the damages issue had not been resolved. Now that a verdict has been entered as to damages, appellants again appeal to this Court. For the reasons that follow, we reverse.

Appellant raises six issues on appeal: 1) Whether the trial court erred by allowing the telephonic deposition of John Volovski to be taken by appellees two days prior to trial[1] when Volovski had been available for deposition from the date of the accident until January 1985; 2) whether the trial court erred in bifurcating the trial on the first day of trial thereby requiring two separate juries to hear the issues of liability and damages; 3) whether the trial court erred in not allowing testimony regarding Kephart's condition at the time appellees entrusted the keys to him; 4) whether the court erred in ruling appellants could not introduce testimony regarding where Kephart was and how much he drank between the time he received the keys and the accident; 5) whether defense counsel waived the ruling of no intoxication testimony by putting sobriety at issue; and 6) whether the trial court erred in refusing all of appellants' points for charge.

Appellants claim the allowance and admission of Volovski's deposition prejudiced them because they had not anticipated his testimony and could not prepare evidence to discredit it. They also claim the telephonic deposition deprived them of the person to person confrontation with this witness which is necessary to properly pursue cross-examination. Since the deposition occurred so close to trial, appellants could not conduct any other type of discovery with this witness. Thus, appellants claim the trial court abused its discretion by authorizing this discovery.

■ Initially, we recognize the rules do not establish a timetable for discovery and these matters come within the trial court's discretion. *Lombardo v. DeMarco*, 350 Pa.Su-

---

1. Actually, the court allowed the deposition to be taken three days prior to trial. *See, infra.*

per. 490, 504 A.2d 1256 (1985). It is also within the trial court's discretion to admit or exclude a deposition during trial and we will not disturb this decision absent an abuse of discretion. *Egelkamp v. Egelkamp*, 362 Pa.Super. 269, 524 A.2d 501 (1987).

■ Any party seeking to take the deposition of a person outside the Commonwealth must give reasonable notice in writing to all parties. 42 Pa.C.S. § 5325(a)(1). We cannot find any evidence on the record showing notice was given in writing to appellants. The record does show the trial court issued upon appellants a rule to show cause why the deposition should not be allowed. The rule was issued May 28, 1985 and was returnable on May 29, 1985. The court, on May 29, ordered the deposition taken no later than May 31, 1985. Trial commenced June 3, 1985. We find this was an abuse of the trial court's discretion.

■ The trial court, as overseer of discovery matters, is to ensure adequate and prompt discovery. *Lombardo, supra*. Appellees, in their motion for leave of court to take Volovski's deposition, admit Volovski was available until January, 1985 when he joined the military. Their contention is they intended to take the deposition in April or May, 1985 when Volovski would return home for a visit. When Volovski's visit turned out to be very short (36 hours), their plans to take the deposition were thwarted. Thus, the motion, six days prior to trial, to take Volovski's deposition via telephone. The explanation given by appellees for the delay in taking this deposition is unacceptable to this Court. Appellants filed a summons which was served upon appellees on March 13, 1981; the complaint was filed December 23, 1981. Appellees had no less than four years after notice of the lawsuit to take Volovski's deposition. Allowing them to depose a witness three days prior to trial was an abuse of discretion on the trial court's part—especially when we note May 31, 1985 fell on a Friday and June 3, 1985 was the following Monday. Thus, appellants did not even have two full working days in which to prepare evidence to discredit or counter Volovski's deposition.

■ Appellants next claim the trial court erred in bifurcating the trial on oral motion by appellees the morning of trial without prior notice to appellants. The court claims to have bifurcated the trial on the issues of liability and damages when "it became abundantly clear that testimony to drinking and intoxication which might be presented during the course of a consolidated trial would not be pertinent to the question of liability and threatened serious prejudice to the defendants." Opinion, 10/3/86, p. 3. Obviously, the court was wrong in believing the liability issue would not hinge upon any testimony regarding Kephart's intoxication before, during and after the collision. The liability of appellees is determined almost entirely by such testimony. While the trial court does have discretion to order a separate trial on the issues of liability and damages in order to avoid prejudice, *Ecksel v. Orleans Construction Co.,* 360 Pa.Super. 119, 519 A.2d 1021 (1987); Pa.R.C.P. 213(b), the decision to bifurcate should be made only after careful consideration. *Stevenson v. General Motors Corporation,* 513 Pa. 411, 521 A.2d 413 (1987).

> It [bifurcation] should be carefully and cautiously applied and be utilized only in a case and at a juncture where informed judgment impels the court to conclude that application of the rule will manifestly promote convenience and/or actually avoid prejudice. Piecemeal litigation is not to be encouraged. *Particularly is this so in the field of personal injury litigation, where the issues of liability and damages are generally interwoven and the evidence bearing upon the respective issues is commingled and overlapping. Brown v. General Motors Corp.,* 67 Wash.2d 278, 282, 407 P.2d 461, 464 (1965) (citations omitted).

*Id.,* 513 Pa. at 422, 521 A.2d at 419. (Emphasis added.)

Therefore, we find bifurcation was not necessary to avoid prejudice to appellees and Kephart; in fact, the testimony the trial court sought to avoid during the liability phase of trial is pertinent in determining the liability among appellees and Kephart.

Third, appellants claim the trial court denied them the opportunity to prove negligent entrustment against appellees by not allowing testimony regarding Kephart's intoxication at the time he received the keys from appellees. While appellants wanted to bring this testimony in to prove the elements of negligent entrustment, appellees claim it would not be enough for appellants to show Kephart was intoxicated when he picked up the keys; they must show the entrustment of the keys was a proximate cause of the accident.

▊ The trial court decided, after an offer of proof, not to allow testimony regarding Kephart's intoxication when he received the keys. In his Opinion the judge states the testimony would be irrelevant since the keys were given to Kephart 17 hours before the collision with appellants.[2] We understand the court's concern with the prejudicial and inflammatory potential that testimony about a defendant's intoxication has in a jury trial. However, the intoxication testimony was a vital part of appellants' cause of action against appellees. This ruling effectively denied appellants the opportunity to prove their claim of negligent entrustment.

The Commonwealth Court most recently decided a case involving the issue of negligent entrustment in *Robare v. Pekarcik*, 109 Pa.Commw. 87, 530 A.2d 534 (1987). The court stated the required proof for the negligent entrustment claim was that the driver was intoxicated at the time the keys were given to him. The court supports its position by citing three cases which actually set forth a basis of recovery under negligent entrustment, in particular *Gibson v. Bruner*, 406 Pa. 315, 178 A.2d 145 (1961).

The question presented in *Gibson* is identical to ours: Did the vehicle owner give the driver permission to take and operate his vehicle with knowledge the driver was intoxicat-

2. Although the trial court Opinion states the accident occurred 17 hours after entrustment of the keys, the testimony indicates Kephart received the keys at 9:30 p.m. on November 7, 1980 and the accident occurred at 3:30 p.m. on November 8, thus making an 18–hour interval.

ed and not in a condition to safely operate the vehicle? The court said if the owner had this knowledge, the owner was liable. The major factual difference between *Gibson* and our case is the time of the accident. In *Gibson*, the accident occurred two hours and forty minutes after the driver took the truck. In our case, Kephart crashed into appellants' car approximately 18 hours after Miller and Brubaker gave him the keys to Miller's car. In *Gibson*, the court absolved the owner of liability because, even though the driver was intoxicated at the time of the accident, it was not shown that the driver was intoxicated when the owner entrusted his vehicle. It was further found the driver was only given permission to drive the truck home. Instead, he went somewhere else and continued drinking. "Such conduct constituted a substantial deviation from the authorized and permitted use and the record is clear that when the accident occurred, [driver] was clearly on a frolic of his own." *Gibson*, 178 A.2d at 148. Despite this language, however, the court indicates liability on an entruster is based solely upon knowledge at the time of the entrustment:

> Under such uncontradicted facts Bernard Bruner would not be liable for his son's transgressions *unless* he knew when he permitted Edward Bruner to take the truck that, by reason of intoxication, he was unfit to drive the truck or, by reason of such condition, he would or might disregard the instructions to take the truck home and instead take the truck elsewhere and continue drinking.

> \*   \*   \*   \*   \*   \*

> The burden was upon Mrs. Gibson, seeking to impose liability on Bernard Bruner, to prove that when Edward Bruner left Kline's home he was not in a condition to operate a motor vehicle. This she failed to prove. Mrs. Gibson relied for such proof upon Bernard Bruner and his testimony falls far short of proving his son was intoxicated *at the time* permission to operate the truck was given. Had she sought such proof from Kline or the bartenders

and patrons of the taverns in Butler she might have sustained her burden of proof.

*Gibson,* 178 A.2d at 148. (Emphasis in original).

■ If appellees knew Kephart's condition would or might cause him to disregard the instructions that the car should be returned by 11:30 p.m., appellees are not absolved of liability by claiming Kephart "was clearly on a frolic of his own." For appellees to know whether Kephart would or might disregard the instructions, they had to know what his condition was when they entrusted him with the vehicle.

In a case just recently decided by this Court, the question arose whether a vehicle owner could be convicted of violating 75 Pa.C.S. § 1575(a)[3] where the owner did not have knowledge that the driver would operate his car in a manner disregardful of the Motor Vehicle Code. *Commonwealth v. Tharp,* 373 Pa.Super. 285, 541 A.2d 14 (1988). Tharp, the vehicle owner, had given a co-worker his permission to drive them to a party after leaving a bar where they had been drinking since Tharp's eyes were bothering him. The keys were left in the ignition while the two went into the party. About 3:30 a.m. Tharp went out to his car and fell asleep in the front passenger seat. While he was sleeping, his co-worker came out and drove the car into a bridge. The Commonwealth prosecuted Tharp for permitting a violation of the Motor Vehicle Code since he had given his co-worker permission to drive the car. Tharp claimed under the statute he was required to have *knowledge* his car would be driven illegally. We agreed:

> [A] vehicle owner giving permission for another to drive his vehicle is entitled to presume that that driver will obey the law. By extension, then, the owner enjoys a presumption that his giving of permission is lawful and the Commonwealth must prove beyond a reasonable doubt that this was not so. Only when the owner, at the

**3.** § 1575 Permitting violation of title
(a) General rule—
No person shall authorize or permit a motor vehicle owned by him or under his control to be driven in violation of any of the provisions of this title.

time he gives permission, or, if present during the permitted operation of his vehicle by another, knows or has reason to know or suspect that the driver will not obey the law is this presumption rebutted.

*Id.*

■ Appellants need to prove "knowledge" on the part of appellees that Kephart was incompetent or unfit to drive. If Kephart was intoxicated then appellants can meet this burden of proof. If and when appellants prove Kephart was intoxicated when he received the keys from appellees and appellees knew what Kephart's condition was, the question of causation should be one for the jury. *Anderson v. Bushong Pontiac Co.*, 404 Pa. 382, 171 A.2d 771 (1961).

■ Fourth, appellants claim the trial court erred in not allowing testimony regarding Kephart's drinking between the time of the entrustment and the collision. Appellants wanted to introduce this testimony to prove causation. Based upon the witnesses appellants had, they believed they could prove negligent entrustment by appellees. The court, however, disallowed all of this testimony claiming appellants could not prove causation, i.e. the accident occurred 18 hours after the entrustment, thus it was too remote. Again, causation is an issue for the jury once they have heard all the relevant testimony. *Id.* Just as we have decided appellants should be allowed to offer testimony regarding Kephart's condition at the time of entrustment, so should appellants be allowed to introduce evidence of Kephart's drinking activities and whereabouts after the entrustment. It is once again a jury question whether causation flowed from the initial entrustment and Kephart's condition at that time, or whether intervening conduct superseded the initial consent.

The last two issues raised by appellants will be resolved at the new trial. Therefore, we need not address these issues.[4]

4. Appellants also claimed the court erred by not allowing testimony concerning Kephart's parole status. However, this was not argued in

We reverse the Order denying appellants' motion for new trial and remand the matter for a new trial consistent with this Opinion.

Order reversed; case remanded for new trial; jurisdiction relinquished.

POPOVICH, J., concurs in the result.

the brief, therefore, it is waived. *Commonwealth v. Balch,* 328 Pa.Super. 71, 476 A.2d 458 (1984).