2025 PA Super 166

| | | |
|---|---|---|
| SARAMARI SOMERLOT AND RYAN DUFRESNE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| SOON JUNG, M.D.; S.E. PA PAIN MANAGEMENT, LTD, D/B/A SEPA PAIN AND SPINE; PAIN MANAGEMENT CENTERS OF AMERICA, LLC; BOSTON SCIENTIFIC CORPORATION; JOHN DOES 1-10; JOHN DOES 11-20; AND JOHN DOES 21-30 | : | |
| | : | No. 2578 EDA 2024 |

Appeal from the Orders Entered August 29, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 230903138

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

OPINION BY KUNSELMAN, J.: **FILED JULY 30, 2025**

## I. Introduction

"When performance of a duty under a contract is due, any non-performance is a breach." RESTATEMENT (SECOND) OF CONTRACTS § 235(2). Pennsylvania contract law could not be more clear. *See Camenisch v. Allen*, 44 A.2d 309, 310 (Pa. Super. 1945). In this personal-injury action, Plaintiff Saramari Somerlot contracted to sue Dr. Soon Jung, M.D.; S.E. PA Pain Management, Ltd, d/b/a SEPA Pain and Spine; and Pain Management Centers Of America, LLC solely in Bucks County. Ms. Somerlot breached that contract by suing those Defendants in Philadelphia County. She and her husband, Ryan Dufresne, appeal from the orders of the Court of Common Pleas of

Philadelphia County transferring this case to Bucks County. Under principles of contract law, parties are free to pre-select among all possible proper venues which venue will decide legal disputes that might arise between them. Thus, we affirm.

## II.    Factual & Procedural Background

In June of 2021, Ms. Somerlot fell and injured her pinky finger. **See** First Amended Complaint at 16.[1] Due to pain and decreased range of motion she sought pain treatment from Dr. Jung at S.E. PA Pain Management, Ltd and Pain Management Centers of America, LLC (collectively, "Pain Management"). Pain Management's office/surgical facility was in Bucks County. **See id.** at 4-6.

During the summer of 2021, Ms. Somerlot visited Dr. Jung's office seven times, where she received a series of five ketamine infusions. **Id.** at 17. On September 3, 2021 Dr. Jung inserted a trial surgical implant, Boston Scientific's Spinal-Cord Stimulator ("SCS"), in Ms. Somerlot's spine. **Id.** This temporary device was removed on September 8, 2021, at which time Dr. Jung determined Ms. Somerlot needed the SCS implant and he scheduled the spinal cord surgery for October 1, 2021. **Id.** On that date, Ms. Somerlot returned to Pain Management's surgical facility for the outpatient procedure. **Id.**

_____

[1] Because this appeal arises from preliminary objections during the pleadings stage, we accept the facts alleged in the operative complaint as true. **See, e.g.**, **Richmond v. McHale**, 35 A.3d 779, 783 (Pa. Super. 2012).

Prior to surgery, Pain Management presented her with a one-page form, titled "Consent to Operate, Administration of Anesthetics and Rendering of Medical Services." The form contained eight, numbered paragraphs and was in single-spaced, ten-point font. **See** Consent-to-Operate Contract at 1. Paragraphs one through five gave consent for the procedure, identified potential risks, discussed anesthesia, and authorized necessary medical care.

Paragraphs six through eight provided as follows:

6.    I . . . hereby authorize all doctors, pharmacists, hospitals, [Pain Management,] or other institutions rendering care and treatment to furnish the responsible parties and/or insurance companies with full information regarding treatment rendered, including copies of my records. A photostatic copy of this authorization shall be considered as effective and valid as the original.

7.    NOTICE: Any legal claims or civil actions, including, but not limited to, a claim for medical malpractice in any way related to this admission/procedure, and medical services provided by [Pain Management] or its employees, shall be brought solely in the Courts of Bucks County, in the Commonwealth of Pennsylvania.

      If patient . . . does not agree to this paragraph number 6, then he/she will initial here. _____
                                                          Initials

8.    The undersigned certifies that he/she has read the above and is the patient . . . authorized to execute the above and ascent to its terms and risks.

**Id.** (some punctuation omitted). Ms. Somerlot signed and dated the contract, but she did not place her initials after the second sentence under paragraph number seven. **See id**; **see also** Parties' Stipulations Regarding Venue at 1-2.

During the surgery, Dr. Jung "encountered difficulty . . . when 'the sheath retracted into the tissue' and he undertook efforts to find it using blunt dissection . . . ." First Amended Complaint at 17. He used a hemostat to grab the sheath and pull it out of Ms. Somerlot's tissue. The removal of the sheath also caused the removal of the right SCS, which Dr. Jung tried but failed to reinsert. *See id.* at 18. He "decided to go with one [left-side-only SCS] in completing the procedure." *Id.*

As a result of the botched surgery, Ms. Somerlot was left paralyzed from the chest down. She also suffered damage to her vital organs (including a heart attack), cognitive deficits, loss of fine motor skills, emotional distress, and psychological harm. *See id.* at 20.

Ms. Somerlot and Mr. Dufresne commenced this action against Dr. Jung, Pain Management, and Boston Scientific in the Court of Common Pleas of Philadelphia County. They brought claims for medical malpractice, corporate negligence, product liability, and loss of consortium.

Boston Scientific agreed that venue was proper as to it on the product-liability claims, because it regularly conducted business in Philadelphia County. However, Dr. Jung and Pain Management preliminarily objected to venue in Philadelphia County based on the venue-selection clause in Ms. Somerlot's Consent-to-Operate Contract. In Dr. Jung's and Pain Management's view, under the venue-selection clause, the only permissible venue was the Court of Common Pleas of Bucks County.

After briefing by the parties and the filing of stipulations, the trial court entered two, separate orders sustaining the preliminary objections of Dr. Jung and Pain Management and transferring the case to Bucks County. Ms. Somerlot and Mr. Dufresne timely filed a single notice of appeal, purporting to appeal both orders. This was procedural error under the Pennsylvania Rules of Appellate Procedure and may deprive this Court of appellate jurisdiction in whole or in part. We therefore begin our analysis by considering the appellate jurisdiction of this Court.

### III. Analysis

*A.      Appellate Jurisdiction*

Dr. Jung and Pain Management have not challenged our jurisdiction to entertain this appeal. Nevertheless, whether Ms. Somerlot and Mr. Dufresne properly filed their appeal "concerns the jurisdiction of the appellate court, a non-waivable matter;" hence, this Court may raise the "issue *sua sponte* even [if] the parties have not done so." **Drohan v. Sorbus, Inc.**, 584 A.2d 964, 966 (Pa. Super. 1990). "Jurisdiction is a question of law; the appellate standard of review is *de novo*, and the scope of review is plenary." **Whittaker v. Lu**, 323 A.3d 871, 874 (Pa. Super. 2024) (quotation marks omitted).

Our appellate jurisdiction "extends to (1) a final order or an order certified by the trial court as a final order; (2) an interlocutory order as of right; (3) an interlocutory order by permission; (4) or a collateral order." **Id.** at 874-75.

Here, the trial court entered two interlocutory orders transferring the case to another court of coordinate jurisdiction by sustaining preliminary objections to venue. "An appeal may be taken as of right from an order in a civil action or proceeding changing venue, transferring the matter to another court of coordinate jurisdiction . . . ." Pa.R.A.P. 311(c). Thus, the trial court's two orders were immediately appealable as of right when entered.

However, the drafters wrote the rule in the singular. *An* appeal may be taken from *an* order. Thus, "a single appeal is incapable of bringing on for review more than one [appealable] order, judgment or decree." *General Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 263 A.2d 448, 452 (Pa. 1970). In other words, "when a party seeks to appeal from two, separate orders entered at the same docket number, the party must file two, separate notices of appeal." *Howard v. First National Bank*, 237 A.3d 440 n.1 (Pa. Super. 2020).

Typically, if one notice of appeal is filed for multiple orders or judgments, the appellants place the appellate court in the difficult position of deciding which order or judgment the notice of appeal concerns. *See, e.g.*, *Frailey Township School District v. Schuylkill Mining Co.*, 64 A.2d 788, 790 (Pa. 1949) (stating that, where the plaintiff and the defendant each filed one appeal from multiple judgments, "we cannot do better than arbitrarily allocate the plaintiff's appeal to the first of the judgments entered for the defendant and the defendant's appeal to the first of the judgments entered for the plaintiff."). *See also Gibson v. Bruner*, 178 A.2d 145 (Pa. 1961) (allowing

counsel to choose at oral argument which judgment he desired the court to review and disregarding other judgments); ***Dommes v. Zuroski***, 38 A.2d 73 (Pa. 1944) (determining from briefs which judgment was actually meant to be appealed); ***and Jordan v. Eisele***, 116 A. 75 (Pa. 1922) (permitting appellant to elect which judgment he most wanted the court to review).

By contrast, the Supreme Court "has quashed such appeals where no meaningful choice could be made." ***General Electric***, 263 A.2d at 453. For example, in ***Zollinger v. Adam Eidemiller, Inc.***, 131 A.2d 103 (Pa. 1957), two plaintiffs filed separate causes of action in one complaint. After the trial court resolved the issue of venue in favor of the defendant, the plaintiffs filed a single notice of appeal. The Supreme Court quashed, because the "joint appeal was improperly taken; two appeals, one by each plaintiff, were required." ***Id.*** Furthermore, the ***Zollinger*** Court could not draw a distinction between the two plaintiffs, so as to allow the appeal to proceed as to one and not the other. ***See also Shaw v. Plains Township***, 113 A. 410 (1921) (accord).

Unlike the plaintiffs in ***Zollinger***, who filed separate causes of action in one complaint, Ms. Somerlot and Mr. Dufresne filed related causes of action, arising from the same transaction. In fact, Mr. Dufresne's claim for loss of consortium is wholly dependent upon and derivative of Ms. Somerlot's claims for medical malpractice and product defect. Thus, the causes of actions alleged in the operative complaint are not separate from one another. Hence,

we need not concern ourselves with quashal of the appeal as to one plaintiff and not the other.

More importantly, the trial court's appealed-from orders resolve the issue of venue on identical bases as to Dr. Jung and Pain Management. Thus, unlike the orders and judgments of the above cases, the appealed-from orders raise "precisely the same" appellate issues. **General Electric**, 263 A.2d at 453. As a result, we need not determine which of the two orders Ms. Somerlot and Mr. Dufresne actually seek to challenge on appeal.

Finally, the appellate period has long since expired for them to file timely, separate notices of appeal. If we were to quash on the technicality of Ms. Somerlot and Mr. Dufresne only filing one notice of appeal, instead of two, we would deprive them of their interlocutory appeal.

Where, as here, "the issues raised as to both [orders] are precisely the same; (2) neither defendant objected to the plaintiffs bringing but one appeal; and (3) if the appeal were quashed, the statutory period allowed for appeal will have already expired, precluding the institution of proper appeals . . . we shall consider the appeal from these two [orders] on the merits, but mak[e] special note of our disapproval of this procedure." **Id.** Filing one notice of appeal for two appealable orders is a risky appellate practice that all appellants would do well to avoid in the future.

Having determined that our appellate jurisdiction is sufficiently vested, we turn to the merits of the appeal. Ms. Somerlot and Mr. Dufresne raise the following three issues:

- 8 -

1. Did the trial court err when it ordered venue be transferred to the Court of Common Pleas of Bucks County where venue was proper as to Defendant Boston Scientific in the Court of Common Pleas of Philadelphia County and, therefore, pursuant to Pennsylvania Rule of Civil Procedure 1006(c), venue was proper as to all defendants in the Court of Common Pleas of Philadelphia County?

2. Did the trial court err to the extent it concluded that a venue selection clause in a medical consent form between [Ms. Somerlot] and some, but not all, defendants controlled over Pennsylvania Rule of Civil Procedure 1006(c)'s plain language, which expressly provides that venue is proper in the Court of Common Pleas of Philadelphia County, given Boston Scientific's stipulation that venue was proper as to it in the Court of Common Pleas of Philadelphia County?

3. Did the trial court err when it enforced a venue-selection clause in a medical-consent form where that venue-selection clause is unenforceable, because it is ambiguous, unreasonable, unconscionable, and/or against public policy?

Somerlot/Dufresne Brief at 8-9. We address issues one and two together and then dispose of the third issue.

*B.    Venue-Selection Clause Supersedes Procedural Rules of Venue*

In their first two issues, Ms. Somerlot and Mr. Dufresne contend that Rule of Civil Procedure 1006(c) supplants substantive contract law. In making their claim, Ms. Somerlot and Mr. Dufresne disregard the fundamental principles of contractual obligations. They believe that, because Rule 1006(c) allows a plaintiff to bring a lawsuit against all jointly and severally liable defendants in any venue where venue is valid as to any single defendant, then that Rule excuses Ms. Somerlot from her contractual obligations under the venue-selection clause that she accepted in the Consent-to-Operate Contract. ***See id.*** at 18-27.

- 9 -

"If there is any basis to affirm a trial court's decision to transfer venue, the decision must stand. Moreover, the standard of review is one of abuse of discretion." **Peters v. Sidorov**, 855 A.2d 894, 896 (Pa. Super. 2004). "An abuse of discretion is shown by a record of misapplication of the law; or judgment that is manifestly unreasonable; or motivated by partiality, prejudice, bias, or ill-will." **Id.**

Ms. Somerlot and Mr. Dufresne suggest that the trial court misapplied the law by ignoring the plain language of Rule 1006(c). Thus, they contend the trial court committed the first type of abuse of discretion. We disagree.

"An action to enforce a joint or joint and several liability against two or more defendants . . . may be brought against all defendants in any county in which the venue may be laid against any one of the defendants under the general rules of subdivisions (a) or (b)." Pa.R.C.P. 1006(c). However, this Rule only creates the **possibility** of venue in certain counties. It does not **require** that the action be litigated there, nor does it in any way limit a plaintiff's right to contract for another proper venue prior to filing suit.

Critically, the Civil Rules Committee omitted language or a Note to Rule 1006(c) reflecting the fact that Pennsylvania law has long recognized a contract-based exception to all Rule 1006 on venue. The Supreme Court of Pennsylvania has made clear that parties may freely contract to limit venue to one of several available venues. Hence, contrary to Ms. Somerlot's and Mr. Dufresne's contention that the trial court created a novel exception to Rule 1006(c), the Supreme Court first recognized such an exception in **Central**

*Contracting Co. v. C. E. Youngdahl & Co.*, 209 A.2d 810 (Pa. 1965). **See** Somerlot/Dufresne Brief at 22-23.

The trial court simply applied the "modern and correct rule [*i.e.,*] . . . a court in which venue is proper and which has jurisdiction **should decline** to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another venue and where such agreement is not unreasonable at the time of litigation." **Central Contracting**, 209 A.2d at 816 (emphasis added). Therefore, whether the contractual agreement to limit venue to Bucks County may supersede Rule 1006(c) is not in doubt. Clearly, under **Central Contracting**, it may, and the trial court explained that it could.

The court correctly opined, "it is quite clear that Philadelphia is a proper venue for this case: Boston Scientific **did** stipulate . . . that Philadelphia County is a proper venue as to [it], thus making it a proper venue as to all Defendants, pursuant to Pa.R.C.P. 1006(c)." Trial Court Opinion, 11/25/24 at 3 (emphasis in original). "However, . . . finding that venue is proper in one county is not the end of the analysis when the plaintiff has contracted to litigate in a different, also proper venue." **Id.** We agree with this analysis and adopt it as our own.

In addition, Ms. Somerlot and Mr. Dufresne suggest that Ms. Somerlot's contract with Dr. Jung and Pain Management wrongfully bargained "away the rights of other unrelated parties notwithstanding that the Supreme Court expressly created a rule to govern venue in multi-defendant actions." Somerlot/Dufresne Brief at 26. They fail to identify whose rights those are.

Presumably, Ms. Somerlot and Mr. Dufresne refer to Boston Scientific, but they never explain where they get the standing to assert the rights of that corporation, especially when it elected not to participate in this appeal.

Nevertheless, Ms. Somerlot's and Mr. Dufresne's contention is illogical. Defendants have no right to select the venue under Rule 1006. Their only right is to object to the case being tried in an **improper** venue. Because Bucks County is where this cause of action arose, it is a proper venue to try Ms. Somerlot's product-defect claims against Boston Scientific. **See** Pa.R.C.P. 2179(a)(3). Because Mr. Dufresne's loss-of-consortium claim is derivative of his wife's product-defect claims, Bucks County is also a proper venue for his claim against the corporation. Thus, enforcement of the contract between Ms. Somerlot and Dr. Jung and Pain Management infringes upon no right of Boston Scientific.

Therefore, Ms. Somerlot's and Mr. Dufresne's claim that Ms. Somerlot may breach her contract with Dr. Jung and Pain Management by trying this case in Philadelphia County, because Boston Scientific regularly does business there and agreed that venue was proper as to it in Philadelphia County is unavailing. We dismiss their first and second appellate issues as meritless.

C.    *Venue-Selection Clause Is Enforceable*

For their third and final claim of error, Ms. Somerlot and Mr. Dufresne argue that the venue-selection clause in the Consent-to-Operate Contract is unenforceable. First, they contend that the venue-selection clause was unclear, because the second sentence of paragraph seven, regarding the right

to opt out of the clause referenced paragraph six. In their view, the trial court erroneously dismissed the inclusion of the number "6" in the second sentence as a "minor typographical error." Trial Court Opinion, 11/25/24, at 6. Ms. Somerlot and Mr. Dufresne therefore contend that Ms. Somerlot did not make a knowing and voluntary waiver of her right to file suit in Philadelphia County. *See* Somerlot/Dufresne Brief at 28-34.

Ms. Somerlot and Mr. Dufresne cite to no case that required Pain Management to include an opt-out provision in the venue-selection clause in order to render it valid and enforceable, and our research has revealed none. Thus, the mere fact that the opt-out provision included the number "6", rather than the number "7", does not make paragraph 7 *per se* ambiguous or unenforceable.

In fact, the language of the forum-selection clause was quite clear and unambiguous. "7. NOTICE: Any legal claims or civil actions, including, but not limited to, a claim for medical malpractice in any way related to this admission/procedure, and medical services provided by [Pain Management] or its employees, shall be brought solely in the Courts of Bucks County, in the Commonwealth of Pennsylvania." Consent-to-Operate Contract at 1. Any reasonable reader of that paragraph would know exactly to what she was agreeing. It even included the word "NOTICE," in all caps, to draw the reader's attention to the paragraph. This paragraph would be entirely enforceable without the opt-out provision. Hence, any drafting error in the opt-out

provision has no bearing on whether Ms. Somerlot knew she was agreeing to sue Dr. Jung and Pain Management solely in Bucks County.

It is hornbook law that, to form a contract, there must be an offer, acceptance, and consideration.[2] "An offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Cobaugh v. Klick–Lewis, Inc.,* 561 A.2d 1248, 1249 (Pa. Super. 1989) (citing RESTATEMENT (SECOND) OF CONTRACTS § 24).

When Dr. Jung and Pain Management presented Ms. Somerlot with the form containing the venue-selection clause, they made her an offer, because the form manifested an intent to enter a bargain for proceeding with the surgery. If Ms. Somerlot did not wish to accept the offer with the venue-selection clause, the law of contracts allowed her to reject that clause. She could have done so by making a counteroffer that did not include the venue-selection clause.

A counteroffer is defined as "an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer." RESTATEMENT

---

[2] We note that Ms. Somerlot and Mr. Dufresne mention, almost as an aside, that "there was not consideration at the time the venue-selection clause was signed," because, under the Rules of Civil Procedure that existed in 2021, Ms. Somerlot could only bring a medical-malpractice claim in the county where the claim arose. Somerlot/Dufresne Brief at 37. However, they did not raise this issue in the trial court as a basis for not enforcing the Consent-to-Operate Contract. Hence, we dismiss it as waived. *See* Pa.R.A.P. 302(a).

(SECOND) OF CONTRACTS § 39. In fact, "a reply to an offer which purports to accept it, but changes the conditions of the offer, is not an acceptance but is a counteroffer, having the effect of terminating the original offer." ***First Home Sav. Bank, FSB v. Nernberg***, 648 A.2d 9, 15 (Pa. Super. 1994).

Hence, if Ms. Somerlot did not want the venue-selection clause included in the Consent-to-Operate Contract, she could have simply crossed it out, signed the form, and handed it back to Pain Management. This would have rejected the offer from Dr. Jung and Pain Management to perform the surgery in exchange for all the terms in the original form and made the counteroffer to proceed without the venue-selection clause. Ms. Somerlot did not do this. Nor did she reject the offer entirely and leave the surgical facility without undergoing the procedure. Importantly, Ms. Somerlot makes no contention that her life was in danger prior to surgery nor that she was under duress when she signed the Consent-to-Operate Contract.

Thus, we agree with the trial court. The inclusion of the number "6" in the opt-out provision was a typographical error that in no way renders the venue-selection clause ambiguous or unenforceable.

Second, Ms. Somerlot and Mr. Dufresne believe that the venue-selection clause is unenforceable under ***Central Contracting***, ***supra***. They present a novel argument that, because Ms. Somerlot would have had to file her medical-malpractice action in Bucks County under the prior version of Rule 1006, the provision became unreasonable at the time she filed suit. This

argument is unpersuasive, because it disregards the test for unreasonableness at the time of suit, as articulated in *Central Contracting*.

A venue-selection clause "is unreasonable *only* where its enforcement would, under all circumstances existing at the time of litigation, seriously impair plaintiff's ability to pursue [her] cause of action." *Central Contracting*, 209 A.2d at 816 (emphasis added). "If the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action, then plaintiff should be bound by [her] agreement." *Id.*

The now-repealed provision of Rule 1006 that required Ms. Somerlot to sue Dr. Jung and Pain Management in Bucks County is not a circumstance existing at the time of litigation. It was a circumstance that existed prior to filing suit. Thus, under the *Central Contracting* test, any reliance upon the Supreme Court's administrative decision to expand the medical-malpractice venue after Ms. Somerlot singed the contract is misplaced.

Moreover, even if we considered the expansion of medical-malpractice venue, that event alone does not dictate that this venue-selection clause is unreasonable. Instead, we ask whether "the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action." *Id.*

Ms. Somerlot and Mr. Dufresne live in Doylestown. *See* First Amended Complaint at 4. Under Pennsylvania Rule of Evidence 201(d), we take judicial notice of the fact that the Court of Common Pleas of Bucks County sits in Doylestown and is less than two miles from the home of Ms. Somerlot and Mr.

Dufresne. Accordingly, the venue to which Ms. Somerlot agreed is **more readily** available to Ms. Somerlot and Mr. Dufresne than the Court of Common Pleas of Philadelphia County, which is over 30 miles from Doylestown.

Turning to the second prong of the **Central Contracting** test, Ms. Somerlot and Mr. Dufresne make no claim that the Court of Common Pleas of Bucks County cannot do substantial justice in this action. Hence, they have offered nothing of record to persuade us that the venue-selection clause is unreasonable, because enforcing the clause does not "seriously impair[] the plaintiff[s'] ability to pursue [their] cause of action." **Central Contracting**, 209 A.2d at 816.

Third, Ms. Somerlot and Mr. Dufresne suggest that the venue-selection clause is unconscionable. They contend that the clause is procedurally unconscionable, because Pain Management "buried" the clause "in paragraph 7 of a verbose consent form . . . ." Somerlot/Dufresne Brief at 38. Furthermore, Ms. Somerlot and Mr. Dufresne claim that Ms. Somerlot lacked a meaningful choice when she signed the Consent-to-Operate Contract, because she received it immediately prior to her out-patient surgery. **See id.** at 39.

As for substantive unconscionability, Ms. Somerlot and Mr. Dufresne say that the "terms are unfavorable to [them]." **Id.** They say this is "especially true where the Supreme Court subsequently amended its rules to expand a plaintiff's choice of venue in medical-malpractice cases." **Id.**

Again, we reject Ms. Somerlot's and Mr. Dufresne's arguments.

- 17 -

"A contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." *Salley v. Option One Mortgage Corp.*, 925 A.2d 115, 119 (Pa. 2007). "The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively." *Id.*

"The burden of proof generally concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts." *Id.* at 119–20. In order to prevail, the party asserting unconscionability must establish both forms of unconscionability. *See id.*

Here, as explained above, Ms. Somerlot was free to make a counteroffer that struck the venue-selection clause or to walk away from the out-patient surgery. Thus, Ms. Somerlot and Mr. Dufresne, as the parties with the burden of proof on this issue, have presented no evidence that Ms. Somerlot lacked a meaningful choice when she signed the Consent-to-Operate Contract. Hence, they cannot prove procedural unconscionability.

Additionally, they offered no evidence that the venue-selection clause is more favorable to Pain Management than to Ms. Somerlot. Thus, we have no basis to hold that the term unreasonably favors Pain Management. Because Ms. Somerlot and Mr. Dufresne fail to satisfy either prong of the test for unconscionability, we dismiss their last appellate issue as meritless.

Orders transferring venue to the Court of Common Pleas of Bucks County affirmed. Case remanded for further proceedings.

Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/30/2025