General Electric Credit Corporation, Appellant,
   *v.* Aetna Casualty and Surety Company et al.

464

Argued October 7, 1969. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

466

*Hubert I. Teitelbaum,* with him *James K. O'Malley,* and *Morris, Safier & Teitelbaum,* for appellant.

*Loyal H. Gregg,* with him *Jones, Gregg, Creehan, Graffam and Gerace,* for appellees.

OPINION BY MR. JUSTICE EAGEN, March 20, 1970:

A cause of action in assumpsit was brought by General Electric Credit Corporation (GECC) to recover on seven fire insurance policies, each issued by a different insurance company but through the same agent, for damage to personal property caused by a fire on October 28, 1963. The personal property, of which GECC was conditional vendor, consisted of equipment in the Silver Spur Restaurant in Monroeville, Allegheny County, Pennsylvania. The jury returned a verdict in favor of GECC for $50,000 against five of the seven insurance companies involved, and the other two insurance companies were held not liable. A subsequent motion for a new trial by GECC was denied. GECC now brings one appeal, asserting errors in the trial and in the charge of the court below, which it alleges entitle it to a new trial as to all seven defendants.

Before reaching the merits, certain procedural issues must first be disposed of.[1] Where a motion for a

---

[1] The following docket entries are relevant:
Feb. 7-9, 1968—Trial.
Feb. 9, 1968—Verdict rendered which was molded to read as follows: 1. Verdict in favor of defendant, The American Insurance Company; 2. Verdict in favor of defendant, The American

new trial is made after a verdict and the motion is over-ruled, no appeal lies from the order refusing the new trial. Such an order is interlocutory and is unappealable: *Bartkewich v. Billinger,* 430 Pa. 207, 241 A. 2d 916 (1968); *Straw v. Sands,* 426 Pa. 81, 231 A. 2d 144 (1967); *O'Donnell v. Bachelor,* 425 Pa. 626, 229 A. 2d 755 (1967); *Lynch v. Metropolitan Life Insurance Company,* 422 Pa. 488, 222 A. 2d 925 (1966). In such case, the appeal must be from the judgment which is entered on the verdict: *Bartkewich v. Billinger,* supra; *Simpson v. Pa. Turnpike Commission,* 384 Pa. 335, 121 A. 2d 84 (1956).

In this case, therefore, no appeal lay from the order of the lower court issued on December 9, 1968, denying GECC's motion for a new trial. However, pursuant to that order, judgments were respectively entered in favor of the defendants, The American Insurance Company and The American Casualty Company, on De-

---

Casualty Company; 3. Verdict in favor of plaintiff in the amount of $6,060.50 against Aetna Casualty and Surety Company; 4. Verdict in favor of plaintiff in the amount of $6,060.50 against Buckeye Union Fire Insurance Company; 5. Verdict in favor of plaintiff in the amount of $4,545.50 against National Union Fire Insurance Company; 6. Verdict in favor of plaintiff in the amount of $4,545.50 against Niagara Fire Insurance Company; 7. Verdict in favor of plaintiff in the amount of $9,-091 against United States Fidelity and Guaranty Company.

February 13, 1968—Plaintiff's motion for a new trial filed.

Dec. 9, 1968—After argument it is ordered that the motion for new trial filed by General Electric Credit Corporation is hereby denied and judgment shall be entered in favor of The American Insurance Company and The American Casualty Company, upon payment of the verdict fee.

Dec. 31, 1968—Judgment entered in favor of The American Insurance Company against General Electric Credit Corporation.

Dec. 31, 1968—Judgment entered in favor of The American Casualty Company against General Electric Credit Corporation.

Jan. 9, 1969—Certiorari from the Supreme Court in the appeal of General Electric Credit Corporation.

cember 31, 1968. *Appeals could* properly be taken from these final judgments.

Judgments were never entered prior to appeal as to the five companies against whom the jury returned its verdict. The judgments entered in favor of The American Insurance Company and The American Casualty Company will not support GECC's appeal from the verdicts against these five defendants, because each defendant's liability is separate, arising out of its separate contract with the plaintiff. Rule 2229(b)[2] of the Pennsylvania Rules of Civil Procedure gives the plaintiff the option of joining two or more persons as defendants if the liabilities of the defendants arise from a common factual background and a common question of law or fact will arise: *Burke v. North Huntingdon Twp.*, 390 Pa. 588, 136 A. 2d 310 (1957). However, this permissive joinder of defendants (or plaintiffs under Rule 2229(a)) does not unite the causes of action, and they remain independent to the same extent as if separate suits had been brought but consolidated for trial: *George v. Snyder*, 52 Pa. D. & C. 58, 49 Lanc. 123 (1944); *Toth v. O'Brien*, 44 Pa. D. & C. 405 (1942); Pa. R. Civ. P. 2231;[3] 4 Anderson Pa. Civ. Prac.

---

[2] "A plaintiff may join as defendants persons against whom he asserts any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the liabilities of all such persons will arise in the action."

[3] Pa. R. Civ. P. 2231 states in part:

"(c) The trial of an action in which parties have joined or have been joined under Rules 2228 and 2229 shall be conducted as if independent actions between such parties had been consolidated for trial.

"(d) Except as otherwise provided by these rules, the joinder of parties in any action shall not affect the procedural rights which each party would have if suing or sued separately, and the verdicts and judgments entered therein shall be joint, several or separate according to the nature of the right or liability therein determined."

609 (1962 ed.). For practice prior to the rule, see *Azinger v. Pa. Railroad Co.*, 262 Pa. 242, 105 A. 87 (1918). Thus when plaintiffs or defendants are joined by virtue of Rule 2229, the claim and liability of each remains distinct and must be separately determined by the jury: *Myers v. Buck*, 50 Luz. 229 (1960); 3 Goodrich-Amram §2231(d)-5. Separate judgments must also be entered in accord with the separate verdicts, as in the case of the joinder of husband and wife under Rule 2228: 4 Anderson Pa. Civ. Prac. 614 (1962 ed.); Notes of the Procedural Rules Committee to Rule 2231(c) and (d). See *Fisher v. Diehl*, 156 Pa. Superior Ct. 476, 40 A. 2d 912 (1945).

Separate verdicts were rendered in this case. The mere fact that judgments were entered on only two of the verdicts does not affect the finality of these two judgments, but neither does it affect the interlocutory nature of the remaining five verdicts upon which judgments had not been entered of record as of the date of appeal.

Therefore, this appeal as to defendants The Aetna Casualty and Surety Company, The Buckeye Union Fire Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., Niagara Fire Insurance Company and United States Fidelity and Guaranty Company will be quashed.

As to the other two defendants, The American Insurance Company and The American Casualty Company, although two final judgments were properly entered in their favor prior to appeal, GECC filed only one appeal therefrom, No. 104 March Term, 1969. Taking one appeal from several judgments is not acceptable practice and is discouraged:[4] *Clark v. Clark*, 411 Pa.

---

[4] To similar effect in the Superior Court, see *Romanovich v. Hilferty*, 212 Pa. Superior Ct. 570, 245 A. 2d 701 (1968) and *Lemmon v. Bufalino*, 204 Pa. Superior Ct. 481, n. 1, at 482, 205 A. 2d 680 (1964).

251, n. 2 at 252, 191 A. 2d 417 (1963). It has been held that a single appeal is incapable of bringing on for review more than one final order, judgment or decree:[5] *Frailey Twp. School District v. Schuylkill Mining Co.,* 361 Pa. 557, 64 A. 2d 788 (1949). When circumstances have permitted, however, we have refrained from quashing the whole appeal,[6] but this Court has quashed such appeals where no meaningful choice could be made.[7]

In this case (1) the issues raised as to both judgments are precisely the same; (2) neither defendant objected to the plaintiff's bringing but one appeal; and (3) if the appeal were quashed, the statutory period

---

[5] Rule 20(A) of the Rules of the Supreme Court of Pennsylvania does not provide to the contrary. The singular number of "any order, judgment or decree" should be noted.

"Parties interested jointly, severally or otherwise *in any order, judgment or decree* in the same case or in joint actions or in cases consolidated for the purpose of trial or argument, may join as appellants or be joined as appellees in a single appeal where the grounds for appeal are similar, or any one or more of them may appeal separately or any two or more may join in an appeal, but the uniting of parties shall not unite the amount in controversy or change the jurisdiction except as provided in Subdivision B." (Emphasis added.)

[6] *Gibson v. Bruner,* 406 Pa. 315, 178 A. 2d 145 (1961) (Counsel permitted to choose during oral argument which judgment he desired the Court to consider.); *Frailey Twp. School District v. Schuylkill Mining Co.,* supra (Court considered first judgment from which plaintiff appealed and first judgment from which defendant appealed; however, all judgments from which plaintiff appealed involved the same issues and all judgments from which defendant appealed involved the same issues; since the lower court was affirmed in all respects this seemingly arbitrary choice was satisfactory.); *Dommes v. Zuroski* 350 Pa. 206, 38 A. 2d 73 (1944) (Court determined from briefs which judgment was actually meant to be appealed from.); *Jordan v. Eisele,* 273 Pa. 95, 116 A. 675 (1922). (Court permitted defendant to elect which judgment he wished the Court most to review.)

[7] *Zollinger v. Adam Eidemiller, Inc.,* 388 Pa. 299, 131 A. 2d 103 (1957); *Shaw v. Plains Township,* 270 Pa. 387, 113 A. 410 (1921).

allowed for appeal will have already expired, precluding the institution of proper appeals.[8]  Under the circumstances, we shall consider the appeal from these two judgments on the merits, but making special note of our disapproval of this procedure.

We turn now to the merits of the case as to defendants, The American Insurance Company and The American Casualty Company.  The relevant facts may be simply stated: The equipment here involved had originally been financed by GECC in August 1962 for a restaurant known as "Essen and Fressen."  This restaurant became insolvent and ceased doing business in July 1963.  Thereafter, for the benefit of all concerned, it was agreed that GECC would repossess the equipment and sell the same to the Silver Spur Company, who was to operate a restaurant in the same location. Pursuant to such agreement, Silver Spur Company executed a conditional sale contract with GECC covering the restaurant equipment and providing that Silver Spur Company would maintain fire and extended coverage insurance on the equipment, payable to the parties as their interests may appear.

At the trial GECC offered the testimony of its attorney who handled the closing with the Silver Spur Company, Mr. Stanley Makoroff.  Attorney Makoroff testified that at the closing on July 8, 1963, he called a Mr. John J. Mattey and ordered insurance on the restaurant equipment in the amount of $80,000, naming the Silver Spur Company as the insured thereon. He further testified that he told Mr. Mattey that "General Electric Credit Corporation was doing the financing and we wanted to be named in the policy under a lender's loss clause . . . . I told him that I wanted a clause that specifically insured us regardless of the cause of the loss, whether it be the act or negligence

---

[8] See the Act of May 19, 1897, P. L. 67, §4, as amended, 12 P.S. §1136.

of the primary insured . . . . Mr. Mattey said that he thought that this was covered in the mortgagee clause and he read the clause to me and I told him that we wanted a special lender's loss payee clause attached and added to the policy . . . . He agreed that he would do that."

Seven different fire insurance policies, one from each of the seven defendant insurance companies, were issued in various amounts, totalling $80,000. Five of the policies[9] contained special lender's loss payee endorsements[10] providing that GECC's coverage would not be affected by any act or neglect of the insured, as had allegedly been requested. The policies issued by The American Insurance Company and The American Casualty Company did not contain the Lender's Loss Payable Clause. Instead GECC was listed on these two policies only[11] as mortgagee in the Mortgagee Clause.[12]

---

[9] Those issued by the five defendant insurance companies held liable by the jury below, as to whom GECC's appeal has been quashed as premature.

[10] The Lender's Loss Payable Clause (Form No. 544-Edition Date 6-54) states in pertinent part:

"Loss, if any, under this policy shall be payable to ——————— whose address is ——————— as lender, mortgagee or trustee, as interest may appear.

. . .

"This insurance solely as to the interest therein of the lender, mortgagee or trustee, shall not be impaired or invalidated by any act or neglect of the borrower, mortgagor or owner of the within described property . . . .

[11] GECC was named both as mortgagee in the Mortgagee Clause and as payee in the Lender's Loss Payable Clause in the policies issued by the Aetna Casualty and Surety Company, The Buckeye Union Fire Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., and Niagara Fire Insurance Company. The policy issued by United States Fidelity and Guaranty Company listed GECC only as payee in the Lender's Loss Payable Clause.

[12] The Mortgagee Clause is essentially a Standard or Union Mortgagee Clause (See 1 Goldin, The Law of Insurance in Pennsylvania ¶431, at 339 (2d ed. 1946)). It states in part:

The fire in this case was the result of arson by the owners (Tasso and George Chronis) of the named insured (Silver Spur Company).[13] The insurance companies are therefore not liable to the insured: *Mineo v. The Eureka Security Fire & Marine Insurance Co.*, 182 Pa. Superior Ct. 75, 125 A. 2d 612 (1956); *Showalter v. Ins. Co.*, 3 Pa. Superior Ct. 448 (1897). In the absence of a stipulation in the policy giving to a creditor, who is made a beneficiary-payee in the policy, higher rights than the insured owner, the creditor's right to proceeds under the policy is derivative and limited to the extent of the insured's right of recovery: *First National Bank v. Newark Fire Insurance Co.*, 118 Pa. Superior Ct. 582, 180 A. 163 (1935). Therefore, unless GECC can come within some provision in the two policies involved protecting it despite any act or neglect of the insured, it will be precluded from recovery under these policies.

GECC, as a conditional vendor, is not so protected by being named mortgagee in the Mortgagee Clause. A condition precedent to recovery under the Standard Mortgagee Clause is that the beneficiary so named have a mortgage upon the property. It does not benefit a judgment or lien creditor: *Dalesandro v. N. Y. Underwriters Ins. Co.*, 121 Pa. Superior Ct. 175, 183 A. 354 (1936); *First National Bank v. Newark Fire Insur-*

---

"Loss, if any, under this policy, shall be payable to the aforesaid as mortgagee (or trustee) as interest may appear under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee), in order of precedence of said mortgages and this insurance as to interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property . . ."

[13] Tasso and George Chronis at No. 57, January Term 1963, in the Court of Oyer and Terminer of Allegheny County, Pennsylvania, confessed to the crimes of arson, felonious burning and conspiracy as to the destruction of the property covered by these policies.

*ance Co.,* supra; *Clarke & Cohen v. Real to Use,* 105 Pa. Superior Ct. 102, 159 A. 454 (1932). Nor will it benefit a conditional vendor. Only those with mortgage liens or deeds of trust similar to and partaking of the nature of a mortgage can benefit thereby: *Clarke & Cohen v. Real to Use,* supra.[14]

In addition, a Standard Mortgagee Clause covers and relates only to insurance on real property or personal property so annexed to the real estate as to be bound by a mortgage on the real estate: *Spangler v. Union National Mt. Joy Bank,* 125 Pa. Superior Ct. 31, 189 A. 541 (1937); *Clarke & Cohen v. Real to Use,* supra. In this case the conditional sale contract stipulated: "All equipment . . . shall remain personal property regardless of how and to what degree it may be affixed or attached to any building or structure or what may be the consequences of its being removed from such building or structure, or for what purpose the Equipment or the building or structure may be used."

Nevertheless, GECC claims that where one with an insurable interest (here GECC), at the time of applying for a policy, advises the agent of the insurance company (here Mr. Mattey) of the desired coverage and truthfully states to such agent the facts involved in the risk, and the agent, acting within his real or apparent authority and without the actual or constructive knowledge of the applicant, fails to insert a requested provision, the insurer cannot set up such mistake in avoidance of the policy. If the events transpired as so alleged, on the facts of this case we agree.

The legal theory on which GECC seems to predicate recovery is that of waiver or estoppel.[15] Whether called

---

[14] The words "mortgagee (or trustee)" in the Standard Mortgagee Clause are words of art, the meanings of which are set forth in *Clarke & Cohen v. Real to Use,* supra.

[15] For a discussion of the legal confusion in the application of these two doctrines in the insurance area, see Morris, *Waiver and*

waiver or estoppel, some authority for such recovery exists in *First National Bank v. Newark Fire Insurance Co.,* 118 Pa. Superior Ct. 582, 180 A. 163 (1935). There First National Bank was a judgment creditor. This status was known to the insurance agent, but he nevertheless designated First National Bank as a mortgagee in the Standard Mortgagee Clause in the policy issued. The Court held there that a provision in a policy insuring an owner of property, making loss payable to a third person as first mortgagee, imports a condition that, to be entitled to receive the amount of the loss or damage, such beneficiary must have a mortgage upon the property. It went on to say, however, that where the insurer has knowledge at the time of the issuance of the policy that the interest of the beneficiary is other than that of mortgagee, it is estopped from asserting a breach of the condition in an action by the beneficiary. Knowledge of the facts by the agent authorized to issue the policy was there deemed knowledge by the insurance company.

First National Bank did *not* recover, however. The Court limited the application of the enunciated doctrine to those situations where the inserted incorrect condition is advantageous to the insurer. The rule was held not applicable where the inserted provision is intended to operate in favor of the insured or one who derives his claim through the insured, by enlarging the insurer's liability. Previously, First National Bank had only been insured under a beneficiary loss payable clause[16] (under which the beneficiary's rights are derivative from the insured's and any defense against the insured can be set up against the beneficiary), had expressed no

*Estoppel in Insurance Policy Litigation,* 105 U. Pa. L. Rev. 925 (1957).

[16] For a sample and discussion of such a clause relating to mortgages, see 1 Goldin, The Law of Insurance in Pennsylvania ¶¶428, 429, at 332 (2d ed. 1946).

clear intention of increasing its coverage so as to protect itself against acts or neglect of the insured, and could not have done so because such a provision was not authorized by statute in the case of judgment creditors. Therefore, First National Bank could not take advantage of the provision in the Standard Mortgagee Clause protecting a mortgagee despite any act or neglect of the insured, because this would have enlarged the insurer's liability from that which would have existed had no mistake occurred. As such, the Newark Fire Insurance Co. was not estopped from raising the defense against First National Bank of the fraudulent burning perpetrated by the insured.

The facts alleged in the case now before this Court are significantly different. At least as to the issue of protection despite acts or neglect of the owner or mortgagor,[17] the coverage and the insurers' liability in the Mortgagee Clauses and in the Lender's Loss Payable Clauses allegedly requested by GECC are identical. Thus the mistaken inclusion of GECC as mortgagee instead of lender's loss payee did not increase the insurers' liability nor aid GECC. It solely operated to the advantage of the insurers by restricting recovery to mortgagees. GECC could not satisfy this status condition, and the insurers through their agent, Mr. Mattey, were allegedly aware of this. In addition, by Attorney Makoroff's uncontradicted testimony, GECC clearly intended to protect itself despite any acts or neglect of the insured. The inclusion of the Lender's Loss Payable Clause in five of the seven policies corroborates this intent. In this case, therefore, the general rule enunciated in *First National Bank v. Newark Fire Ins. Co.*, supra, is applicable. Attorney Makoroff's testimony was admissible to attempt to establish the

---

[17] The complete Mortgagee Clauses in these policies are not included in the record before this Court.

facts as alleged, and the jury should have been instructed that if they believed the testimony of Attorney Makoroff, as a matter of law, The American Insurance Company and The American Casualty Company are estopped from asserting the condition of mortgagee in avoidance of their liabilities. The jury was not so unequivocally charged.

Before we discuss this error in the charge, however, we note that if the facts were believed as alleged by GECC, GECC would have been entitled to a reformation of the policies under this Court's decisions in *Bugen v. N. Y. Life Ins. Co.*, 408 Pa. 472, 184 A. 2d 499 (1962); *Easton v. Wash. Co. Ins. Co.*, 391 Pa. 28, 137 A. 2d 332 (1957); *Overholt v. Reliance Ins. Co.*, 319 Pa. 340, 179 A. 554 (1935); and *Broida v. Travelers Ins. Co.*, 316 Pa. 444, 175 A. 492 (1934). Parol evidence is generally admissible for the purpose of showing that, by reason of a mutual mistake, a written instrument does not truly express the intention of the parties. But to obtain the reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing. This requires evidence by two witnesses or by one witness and corroborating circumstances: *Bugen v. N. Y. Life Ins. Co.*, supra; *Easton v. Wash. Co. Ins. Co.*, supra.

In this case, there was testimony of only one witness, Attorney Makoroff, as to the circumstances in which the insurance was ordered. His testimony was therefore uncontradicted.[18] Although he was an inter-

---

[18] None of the insurers called their agent, Mr. Mattey, as a witness at trial. It is generally agreed that when a potential witness is available and appears to have special information relevant to the case, so that his testimony would not merely be cumulative, and where his relationship with one of the parties is such that the witness would ordinarily be expected to favor him, then if such party does not produce his testimony, the inference arises that it

ested witness, being an attorney for one of the parties, his testimony was "clear, precise and convincing": See *Easton v. Wash. Co. Ins. Co.*, supra; *Broida v. Travelers Ins. Co.*, supra. Attorney Makoroff's credibility is enhanced by the very substantial corroborating circumstances in this case. The Lender's Loss Payable Clause allegedly requested by GECC was in fact included in five of the seven insurance policies issued to GECC. The clause so inserted in all five policies was a standard form clause, Form No. 544-Edition Date 6/54. No reasonable justification is raised in defense why GECC would ever have wanted different coverages in the seven policies, and the designation of GECC as mortgagee only in some policies, as lender's loss payee in one and as both in others supports Attorney Makoroff's testimony concerning Mr. Mattey's belief, or at least uncertainty, over the proper clause to adequately protect GECC. Attorney Makoroff's intent seemed clear, however. This evidence, therefore, met the standard of being clear, precise and convincing so as to support a reformation of the insurance contract for mutual mistake, if the jury believed the testimony of Attorney Makoroff. See *Easton v. Wash. Co. Ins. Co.*, supra.

The trial court partially charged the jury correctly as to the ultimate legal result in such cases as this, but it limited its application to "under certain circumstances and in special cases."[19] Such a limitation was

---

would have been unfavorable: *Haas v. Kasnot*, 371 Pa. 580, 92 A. 2d 171 (1952); *Davidson v. Davidson*, 191 Pa. Superior Ct. 305, 156 A. 2d 549 (1959); *Hertz Corp. v. Hardy*, 197 Pa. Superior Ct. 466, 178 A. 2d 833 (1962).

[19] "It is the Court's interpretation of the law that *under certain circumstances and in special cases* the mistake or omission, even though it is inadvertently made or negligently made by an insurance agent acting within the scope of his authority, will not enable his principal, that is, the insurance company, to avoid a contract of insurance to the injury of the insured who acted in good faith, and such mistake of the agent can be drawn by verbal testimony

included, because the court was uncertain as to the principle's application in a situation where the error could have been discovered by one of the parties prior to the loss had it read the policy as issued. The parties to this transaction were knowledgeable businessmen experienced in commercial affairs. Attorney Makoroff, however, admitted that he had not seen or read the policies until after the fire.[20] The special Lender's Loss Payable Clause is contained on a separate sheet of paper affixed to the standard policy. A cursory examination of the policy would have disclosed its absence if the examiner knew it was supposed to be included. In addition, the two policies that did not contain the Lender's Loss Payable Clause (the two now before the Court) were amended in other respects shortly after they were issued, so someone in GECC presumably had examined the policies.

Nevertheless we have held that if all of the elements necessary for the reformation of a written contract are present, mere negligent conduct on the part of one of the parties thereto in failing to discover the mistake will not bar reformation in the absence of prejudice or a violation of a positive legal duty: *Bugen v. N. Y. Life Ins. Co.,* supra; *Overholt v. Reliance Ins. Co.,* supra;

notwithstanding the language that is in the written policy. Whatever the intent was between the agent and the insured should prevail over that written language in the policy in order to allow recovery to the insured person. This is predicated upon the assumption that where the insured gives answers or makes statements to the agent to be inserted in the policy or the application, that there is a justification for his contention that as to such answers and statements he has a right to take for granted that they will be correctly written by the agent and properly inserted and therefore he can assure himself that he does not have to go to any further inspection of the final papers as drawn." (Emphasis added.)

[20] It should be noted that a fire insurance policy is not signed by the insured. Acceptance of the contract occurs by the payment of the premiums in accordance with the terms of the policy.

*Broida v. Travelers Ins. Co.,* supra. We see no reason why this principle should not be extended by analogy to the limited situation where, although the requirements for reformation were satisfied if the facts were proven as alleged, the suit was instead brought on another theory (here waiver or estoppel). In these circumstances, mere negligent conduct likewise should not bar recovery.

In this case, there was no evidence of record of any prejudice to the defendant insurance companies deriving from the mutual mistake, nor did GECC violate any positive legal duty relating thereto. The lower court should, therefore, have charged the jury that, as a matter of law,[21] if they believed the facts as alleged by At-

---

[21] It was improper for the court to charge: "I cite these two situations to you, the two prevailing views, and then give the problem to you to determine whether or not the circumstances existed in this case from which you may apply the contention of the plaintiff or from which you may apply the contention of the firm, strict rule of being bound by what written document one signs. If you believe the circumstances are such, then the plaintiff would prevail and the two insurance companies who do not have the rider clauses would be liable to the plaintiff. If you feel the circumstances are such that the plaintiff had an obligation or a duty to read his contract, that he should not assume it was in there, then, of course, you may find that the insurance companies are not liable over to the plaintiff. I express this view to you and leave the matter at your discretion and your determination, after you review the facts and circumstances, which principle of law should prevail in this matter."

Fundamental to our jury system is the premise that the court determines all questions of law while the jury passes on the credibility of witnesses and determines the facts. As the evidence GECC presented as to the conversation between its attorney and the defendant insurance companies' agent was uncontradicted, all the jury was entitled to pass upon was the credibility of Attorney Makoroff. They were entitled to disbelieve him if they so chose, but if they did believe him, the legal effect of what was said and the consequences of any negligence involved were solely questions of law for the court.

torney Makoroff, the mere failure to read the policies and discover the error prior to the fire would not bar recovery by GECC under these policies.[22]   The failure to so charge the jury constitutes reversible error, for which GECC is entitled to a new trial.

In view of our disposition of this case, we deem it unnecessary to decide the other errors asserted by GECC.

This appeal as to defendants The Aetna Casualty and Surety Company, The Buckeye Union Fire Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., Niagara Fire Insurance Company and United States Fidelity and Guaranty Company is quashed.

A new trial consistent with this Opinion is ordered as to defendants The American Insurance Company and The American Casualty Company.   The judgments entered below in favor of these two defendants are, therefore, vacated.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

---

[22] A specific exception to this portion of the charge was entered.