TWIN CITY FIRE INSURANCE
COMPANY, Plaintiff,

v.

PITTSBURGH CORNING
CORPORATION,
Defendant.

Civ. A. No. 89–0688.

United States District Court,
W.D. Pennsylvania.

Aug. 26, 1992.

Order Oct. 14, 1992.

Scott A. Milhouse, Pittsburgh, PA, for plaintiff.

Douglas Cameron, Reed Smith Shaw & McClay, Pittsburgh, PA, for defendant.

## ADJUDICATION

MENCER, District Judge.

The above-captioned case having been tried non-jury, we make the following

## FINDINGS OF FACT

1. Plaintiff, Twin City Fire Insurance Company (hereinafter "Twin City"), is a corporation organized pursuant to the laws of the State of Indiana, which maintains its principal place of business in Connecticut.

2. Defendant, Pittsburgh Corning Corporation (hereinafter "Pittsburgh Corning"), maintains its principal place of business at Pittsburgh, Pennsylvania.

3. Twin City, in the course of its business as an insurer, issued to Pittsburgh Corning the following two excess umbrella liability insurance policies:

| Policy No. | Policy Period | Coverage Limits | Gross Premium |
|---|---|---|---|
| TXU105918 | 1/1/83–1/1/84 | $10 million excess of $1 million underlying primary | $ 8,600 |
| 98TXU110876 | 1/1/84–1/1/85 | $10 million excess of $1 million underlying primary | $ 8,950 |

4. From approximately 1962 until 1972, Pittsburgh Corning manufactured asbestos-containing thermal insulation products sold under the name or mark "Unibestos," and claims have been asserted and lawsuits commenced against Pittsburgh Corning by third parties for alleged personal injury and property damage.

5. For many years Pittsburgh Corning has purchased and maintained programs of insurance coverage which included various primary and excess liability insurance coverages, which have been provided by numerous insurers.

6. As a result of the increasing awareness of the liability exposure of Pittsburgh Corning for claims allegedly arising from the Unibestos asbestos-containing thermal insulation products sold by Pittsburgh Corning, beginning no later than July 1, 1980, all primary comprehensive general liability insurers of Pittsburgh Corning have issued policies of insurance to Pittsburgh Corning which have excluded property damage claims relating to asbestos risks or hazards.

7. The Twin City policy numbered TXU105918 (effective January 1, 1983) was intended to provide the same excess liability insurance coverage as had the comparable Old Republic Insurance Company policy numbered ORZU4656 which immediately preceded it. The Old Republic policy specifically excluded coverage for the asbestos property damage hazard or risk. Both the Old Republic Insurance Company policy numbered ORZU4656 and the Twin City policy numbered TXU105918 were issued for the identical annual premium of $8,600.

8. During the two Twin City policy years, the underlying primary insurance policies issued by Hartford Insurance Company, of which Twin City is an affiliate, contained endorsements which excluded the asbestos property damage hazard or risk.

9. The Twin City policies were issued by Baccala & Shoop, a "managing general agent" of Twin City. William Trumbower, a vice-president of Baccala & Shoop and the manager of its Philadelphia branch office, was responsible for underwriting and issuing the Twin City policies on behalf of Twin City.

10. The person at Pittsburgh Corning responsible for purchasing the Twin City policies was John Rusnak, who, at the time the policies were issued, was Pittsburgh Corning's Manager of Credit and Finance. The policies were purchased by Pittsburgh Corning through Johnson & Higgins, an insurance broker. Richard Zappa was the Johnson & Higgins representative involved in the placement of the insurance.

11. In order to obtain the necessary umbrella coverage for Pittsburgh Corning, Mr. Zappa sought the assistance of a "wholesale broker," a secondary broker engaged by the primary broker for obtaining coverage. Johnson & Higgins engaged Bryson Associates whose employee, Maureen Caviston, arranged for the Twin City coverage at issue here.

12. Both of the Twin City policies contain an exclusion for asbestos-related *bodily injury* claims. The exclusion is attached to each policy by way of an endorsement and states as follows: "It is agreed that the insurance provided by this policy does not apply to bodily injury liability for any and all injuries from the inhalation and/or ingestion of asbestos fibers or asbestos dust."

13. The exclusion found in the policies for asbestos-related bodily injury claims

was attached to the policies at the direction of Mr. Trumbower who selected the exclusionary language from a book of exclusions ("the endorsements manual") maintained at the offices of Baccala & Shoop. The Policywriting Worksheet completed by Mr. Trumbower for the 1983–84 policy directed his clerical staff to attach exclusion "A–15" to the policy.

14. After his clerical staff prepared the policies, pursuant to Mr. Trumbower's directions, the policies were returned to Mr. Trumbower in final form for him to review before they were issued. This review was performed by Mr. Trumbower on two separate occasions, once for the 1983–84 policy and later for the 1984–85 policy. When the policies and their endorsements were returned to Mr. Trumbower, the exclusion for asbestos-related bodily injury claims was attached and Mr. Trumbower's review included a review of that exclusion.

15. Mr. Trumbower intended to exclude totally asbestos coverage from the two policies in question, the same as asbestos coverage had been totally excluded in the primary coverage policies and in the 1982 Old Republic excess coverage policy No. ORZU4656.

16. Ms. Caviston of Bryson Associates believes that parties to this litigation intended that the 1983 Twin City Umbrella policy was to contain same terms, conditions and exclusions as the 1982 Old Republic policy.

17. Mr. Zappa expected that the 1983 Twin City Umbrella policy would have the same asbestos exclusion as contained in the 1982 Old Republic policy.

18. The mistake of inserting the unintended asbestos exclusion in the 1983 and 1984 Twin City policies resulted from Mr. Trumbower making an incorrect exclusion designation of A–15 or a clerical employee typing in an exclusion not designated A–15 in the Baccala and Shoop form book of exclusions.

19. In November of 1983 Mr. Zappa informed Ms. Caviston that the 1983 Twin City policy had a different asbestos exclusion than the 1982 Old Republic policy.

20. Mr. Trumbower or Twin City never became aware in 1983 or 1984 that the 1983 and 1984 Twin City policies had a different asbestos exclusion than the 1982 Old Republic policy.

## DISCUSSION

Twin City has filed the above-captioned case seeking to reform two umbrella insurance policies it issued to Pittsburgh Corning for the years 1983 and 1984. Twin City contends that because of an error by its underwriter, the policies did not include an exclusion for property damage claims relating to asbestos risks or hazards.

Pennsylvania courts have consistently held that it is not the province of the Court to alter a contract by construction or to make a new contract for the parties. *Amoco Oil Co. v. Snyder*, 505 Pa. 214, 478 A.2d 795 (1984). However, reformation is a type of remedy that is available to a party that seeks to enforce a contract in which a provision has been incorrectly or imperfectly expressed. Reformation is an equitable remedy that is sparingly granted.

Reformation presupposes that a valid contract between the parties was created but, for some reason, was not properly reflected in the instrument that memorializes the agreement. *H. Prang Trucking Co. v. Local Union No. 469*, 613 F.2d 1235 (3d Cir.1980). A party seeking reformation of a contract, which includes an insurance policy, has the burden to prove by clear, precise and convincing evidence that, as a result of a mistake, a written instrument does not truly express the intention of the parties. *See General Elec. Credit Corp. v. Aetna Casualty & Surety Co.*, 437 Pa. 463, 263 A.2d 448 (1970). We believe Twin City has met this burden in the instant case.

This Court reaches this conclusion by the following analysis. It is not in dispute that all of the primary policies issued during the years 1982, 1983 and 1984, which were below the umbrella coverage, contained complete asbestos exclusions. The 1982 Old Republic umbrella policy contained a complete asbestos exclusion. As

the end of year 1982 approached, Pittsburgh Corning desired to renew its umbrella liability insurance and sought renewal premium proposals. On December 10, 1982 Maureen Caviston of Bryson Associates informed Richard Zappa of Johnson & Higgins that Twin City Fire quotes renewal of expiring 1982 Old Republic policy No. ORZU4656 at $8,600 premium (same as 1982 Old Republic premium) with terms and conditions per 1982 Old Republic policy. (Plaintiff's Exhibit No. 33.)

Then on December 22, 1982, Richard Zappa wrote to Mr. John Rusnak of Pittsburgh Corning setting forth Twin City's renewal premium bid of $8600.00 and informing him that the renewal proposal was for the same coverage, terms and conditions that existed in the expiring policy.

This was followed by a December 28, 1982 letter from Mr. Zappa to Rusnak, enclosing the original and one copy of a binder for umbrella coverage relative to Pittsburgh Corning and an invoice for the premium of $8600.00.

Thereafter, Johnson and Higgins informed Mr. Rusnak that "[i]n accordance with your instructions, we have arranged insurance attaching from January 1, 1983 and expiring January 1, 1984" with conditions to "Exclude Asbestos Products and Asbestos Claims."

It seems clear to this Court that it was the understanding of both parties to this litigation that the policy for the year 1983 coverage would include the same asbestos exclusions which were contained in the Old Republic policy which provided the 1982 coverage. The $8,600 premium for each of these two years further indicates that there was no intent to change the exclusions as to asbestos coverage. Certainly, if Pittsburgh Corning desired broader coverage with less exclusion as to asbestos claims, and if Twin City had been willing to provide such expanded coverage, an increase in premium would have been the factor that would best evidence such an intent.

There is no dispute among the parties that the conditions of the 1982 Old Republic policy did exclude all claims arising from asbestos or asbestos products and that Mr. Trumbower was aware that the same was true as to all of Pittsburgh Corning's primary policy coverages.

Accordingly, the incorrect exclusion contained in the 1983 policy, which did not exclude property damage claims related to asbestos or asbestos products, was a mutual mistake and a legal basis for reformation of the insurance policy.

A mutual mistake exists where the writing fails to reflect correctly the underlying agreement. Here, the parties bargained for a complete asbestos exclusion for the 1983 policy, and the same exclusion was to be continued relative to the 1984 policy. We cannot conclude that because Pittsburgh Corning became aware in 1983 of the drafting error in the 1983 policy and remained silent that such inaction converted the 1984 policy into a unilateral mistake.

The parties' intent remained to obtain and provide umbrella insurance coverage with a complete asbestos exclusion that would match up with the primary insurance coverage that had a complete asbestos exclusion. The premiums charged and paid establish that intent on the part of both parties. A mistake in the exclusion section of the 1983 and 1984 policies, which failed to reflect correctly the intent of the parties, must be deemed a mutual mistake for both years, even if Pittsburgh Corning knew that the 1984 policy as written did not reflect correctly the intent of both parties.

■ However, even if we should conclude that there was not a mutual mistake relative to the 1984 policy, a mistake by one party and knowledge of the mistake by the other party justifies reformation relief the same as a mutual mistake. *See Line Lexington Lumber & Millwork Co. v. Pennsylvania Publishing Corp.*, 451 Pa. 154, 158, 301 A.2d 684, 687 (1973) and *Peoples Natural Gas Company Appeal*, 399 Pa. 226, 234, 160 A.2d 391, 395 (1960).

Even if a showing of bad faith was required, the concealment of the information from Mr. Trumbower, or the failure to disclose the information to Mr. Trumbower, while at the same time disclosing it to other

prospective underwriters, would support a finding of bad faith.

▮ There can be no doubt that the mistake of inserting an incorrect exclusion in the 1983 and 1984 policies was attributable to the carelessness or negligence of Mr. Trumbower acting on behalf of Twin City. However, reformation is not barred by negligent conduct. *See General Electric Credit Corporation v. Aetna Casualty & Surety Company*, 437 Pa. 463, 479, 263 A.2d 448, 457 (1970) and *Bugen v. New York Life Insurance Company*, 408 Pa. 472, 478, 184 A.2d 499, 502 (1962).

It is important to remember that the instant case involves negligence in writing up the intent of the parties relative to an agreement actually reached (same terms and conditions per 1982 Old Republic policy which contained a complete asbestos exclusion).

This claim for reformation is an equitable one and the doctrine of laches applies rather than any statute of limitations. Here, Twin City was unaware of the mistaken endorsement in the policies issued to Pittsburgh Corning for the years 1983 and 1984 until eight months before it filed this action on April 4, 1989. Pittsburgh Corning's failure to inform Twin City of the mistake once Pittsburgh Corning recognized the mistaken endorsement prior to the renewal for 1984 policy period certainly contributed to Twin City's unawareness of the mistaken endorsement until August of 1988.

Further, we fail to find on this record that Pittsburgh Corning has suffered prejudice to its legal rights or its ability to adequately defend Twin City's claims because of an eight month delay before commencing this lawsuit after Twin City became aware of the mistaken endorsement. This Court concludes that the defense of laches is not available to Pittsburgh Corning in this case.

Accordingly, we make the following

**1.** This Court is aware that the above-captioned case was bifurcated for trial of Count I only. However, in view of this Court's conclusion that the policies in issue should be reformed to reflect the actual intent of the parties to exclude

## CONCLUSIONS OF LAW

1. Jurisdiction to adjudicate this case exists pursuant to 28 U.S.C. § 1332 and 28 U.S.C. §§ 2201–2202.

2. The amount in controversy, exclusive of interests and costs, exceeds $10,000.

3. Twin City Fire Insurance Company is equitably entitled to have its policies numbered TXU105918 and 98 TXU110876 issued to Pittsburgh Corning Corporation reformed so as to reflect the actual intent of the parties, which was to exclude coverage for all claims arising from asbestos or asbestos products.

4. The terms and conditions of the Twin City Fire Insurance Company policies numbered TXU105918 and 98TXU110876, as reformed, do not cover the claims involving the asbestos property damage hazard or risk for which Pittsburgh Corning Corporation has demanded coverage.[1]

An appropriate Order will be filed.

## ORDER

AND NOW, this 26th day of August, 1992, after a non-jury trial and in accord with the Findings of Fact, Conclusions of Law and Discussion set forth in the accompanying Adjudication,

IT IS ORDERED AND DECLARED, that:

(1) Twin City Fire Insurance Company policies numbered TXU105918 and 98TXU110876 issued to Pittsburgh Corning Corporation are hereby reformed to exclude coverage for the years 1983 and 1984 for all claims arising from asbestos or asbestos products.

(2) Twin City Fire Insurance Company owes no insurance coverage obligation to Pittsburgh Corning Corporation for claims involving asbestos property damage hazards or risk.

coverage for all claims arising from asbestos or asbestos products, it is axiomatic that the relief sought by the plaintiff in Count II must be afforded.

**1152**

(3) The Clerk of this Court shall upon the filing of this Order mark the above-captioned case closed.

### ORDER

AND NOW, this 14th day of October, 1992, after careful consideration and being of the view that the instant case is not controlled by the case of *United National Insurance Company v. J.H. France Refractories Co.*, 417 Pa.Super. 614, 612 A.2d 1371 (Pa.Super.Ct.1992) (a trial court *may* determine the timeliness of an action in equity by reference to an applicable statute of limitations) (emphasis added), and that this Court's ruling is not inconsistent with the language of 42 Pa.Cons.Stat.Ann. § 5501(c) (nothing in this chapter shall modify the principles of laches heretofore applicable in equitable matters), therefore,

IT IS HEREBY ORDERED that Pittsburgh Corning Corporation's Motion for Amendment of this Court's Findings and Judgment is DENIED.