J-S22031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: THE ESTATE OF EDWARD P. DOYLE, SR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: DANIEL DOYLE | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2308 EDA 2021 |

Appeal from the Decree Entered October 12, 2021
In the Court of Common Pleas of Delaware County
Orphans' Court at No(s): 0030-2021-O

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED FEBRUARY 10, 2023**

Daniel Doyle ("Doyle") appeals from the decree granting the petition for approval of sale of real property on the open real estate market filed by the administratrix of the Estate of Edward P. Doyle, Sr. ("Decedent").  We affirm.

Decedent died intestate in December 2019 leaving his eleven children as his intestate heirs ("heirs").[1]  The heirs were unable to agree which heir should administer Decedent's estate.  Consequently, the orphans' court appointed Alice Buggy Miller, Esquire ("Administratrix"), to do so.  The subject dispute involves real property owned by Decedent at 29 Rodmor Road in Havertown, Delaware County ("the property").  In October 2020, the Administratrix informed the heirs that she intended to have the property

---

[1] The heirs are as follows: Kathleen Doyle Sifter; Edward P. Doyle, Jr.; Michael P. Doyle; Joan Wagner; Susan M. Mehan; Patricia Dolan; Jane Much; Rosemarie Leicht; Amy Bradley; Daniel Doyle; and Rene Garnett.

appraised and inquired if any of them wished to purchase the property. Doyle responded in the affirmative. On November 9, 2020, the Administratrix sent another email to the heirs in which she informed them that Doyle had expressed an interest in purchasing the property. Thereafter, the Administratrix and Doyle verbally agreed that Doyle would purchase the property "as is" for $300,000 in cash, with no property inspection, mortgage, or other contingencies. The Administratrix informed the other heirs of this agreement.

On November 30, 2020, William Bonner, Esquire, sent a letter to the Administratrix indicating that he represented six of the heirs who had concerns regarding the sale price of the property in the proposed sale to Doyle.[2] Upon inquiry, the Administratrix discovered that several of the heirs did not want the property to be sold to Doyle and/or believed that the proposed sale price was below the fair market value of the property. Accordingly, on that same date, the Administratrix sent an email to all of the heirs, including Doyle, informing them that, because the sale to Doyle was contested by some of the heirs, she would petition the orphans' court for approval of the sale.

On December 9, 2020, the Administratrix sent an email to Doyle requesting proof of financing or available funds with which to purchase the property. Doyle provided the requested proof of financing to the

---

[2] Attorney Bonner represented: Kathleen Doyle Sifter; Edward P. Doyle, Jr.; Michael P. Doyle; Joan Wagner; Susan M. Mehan; and Patricia Dolan.

Administratrix. On December 21, 2020, counsel for the Administratrix sent an email to Doyle attaching the proposed agreement for the sale of the property ("Agreement of Sale") which was a standardized form. On December 29, 2020, the Administratrix sent another email to Doyle explaining that she wished to file the petition for approval of sale of the property to Doyle in the orphans' court but could not do so without attaching a copy of the fully executed Agreement of Sale. The Administratrix also discussed the petition for approval of sale of the property to Doyle with Doyle via telephone. On December 31, 2020, Doyle executed the Agreement of Sale.

On January 20, 2021, the Administratrix filed a petition for approval of sale of the property to Doyle, attaching a copy of the Agreement of Sale to the petition. After obtaining an updated appraisal which valued the property at $360,000, six of the heirs opposed the petition on the basis that the sale price was below fair market value. Four of the heirs submitted a joint offer to purchase the property for $310,000.[3] On May 12, 2021, the orphans' court conducted a hearing on the petition at which several witnesses testified. On that same date, the orphans' court entered a decree denying the petition.[4]

_____

[3] The four heirs who submitted a joint offer to purchase the property for $310,000 were Kathleen Doyle Sifter; Edward P. Doyle, Jr.; Michael P. Doyle; and Patricia Dolan.

[4] The orphans' court refers to the decree as having been entered on May 13, 2021; however, the docket reflects that the decree was entered on May 12, 2021.

The Administratrix filed a motion for reconsideration or clarification, which the orphans' court denied. Doyle filed a *lis pendens* on the property and a writ of summons. He thereafter filed a civil complaint for specific performance of the Agreement of Sale and monetary damages against the Administratrix.

On July 9, 2021, the Administratrix filed a second petition for approval of sale wherein she requested approval from the orphans' court to sell the property on the open real estate market. Therein, the Administratrix argued that the absence in the Agreement of Sale of a condition that the sale be approved by the orphans' court was a mutual mistake of fact. The Administratrix further argued that the orphans' court's May 12, 2021 decree denying the petition for approval of sale to Doyle voided the Agreement of Sale. The Administratrix submitted a statement from a real estate agent who estimated the property's market value at $400,000. The four heirs who submitted the joint offer to purchase the property for $310,000 requested that the property be listed on the open real estate market and that their offer be considered. Four of the remaining heirs opposed the petition. Doyle separately filed preliminary objections to the petition for approval. On July 21, 2021, the orphans' court conducted a hearing at which it initially granted the petition for approval of sale but then vacated that ruling and scheduled another hearing to address the preliminary objections filed by Doyle. On August 11, 2021, the orphans' court conducted a hearing on Doyle's preliminary objections before overruling them. The orphans' court then

scheduled a further hearing on the petition for approval of sale on the open real estate market. Doyle filed an answer and new matter to the petition for approval of sale on the open real estate market.

At a hearing conducted on September 13, 2021, the orphans' court consolidated this matter with the civil action filed by Doyle and heard testimony from several witnesses, including the Administratrix and Doyle. The Administratrix testified, *inter alia*, that on November 30, 2020, she sent an email to the heirs informing them that she intended to petition the orphans' court for approval of the sale of the property to Doyle because some of the heirs did not want Doyle to purchase the property. *See* N.T., 9/13/21, at 20-21. The Administratrix further testified that she spoke with Doyle via telephone and discussed the need for him to sign the Agreement of Sale so that she could attach it to the petition for approval of sale of the property to Doyle. *Id*. at 21. The Administratrix also identified the email she sent Doyle on December 29, 2020, wherein she indicated that she wanted to file the petition for approval of sale but could not do so without the executed Agreement of Sale. *Id*. at 22. The Administratrix explained that Doyle thereafter executed the Agreement of Sale on December 31, 2020. *Id*. Doyle testified that he received the emails from the Administratrix and understood that she would be petitioning the orphans' court for approval of the sale because several of his siblings did not want him to purchase the property. *Id*. at 52-53. Doyle additionally testified that he understood that "[the

Administratrix] was under a lot of pressure from some of [his] other siblings and that she just wanted everything to be on the up and up . . . [and] was going to the court so that the [c]ourt could rubber stamp it." *Id*. at 64. Doyle specifically testified that he believed that the Administratrix was filing the petition "to make sure the [c]ourt knew she was being very fair and straightforward with her actions . . .." *Id*. at 65.

On October 12, 2021, the orphans' court entered orders granting the petition to approve sale of the property on the open real estate market and dismissing Doyle's collateral action as moot. On October 13, 2021, the orphans' court entered its findings of fact and conclusions of law wherein it determined that the "missing [c]ourt [a]pproval clause was a material term of the Agreement [of Sale]" which required the court to set aside the Agreement of Sale based on the doctrine of mutual mistake. Findings of Fact and Conclusions of Law, 10/13/21, at 37 (Conclusions of Law Nos. 41, 43). The orphans' court further determined that the sale to Doyle "did not occur because the condition precedent, the [c]ourt [a]pproval of the Agreement [of Sale], did not happen." *Id*. (Conclusion of Law No. 40). Doyle filed a timely notice of appeal, and both he and the orphans' court complied with Pa.R.A.P. 1925.

Doyle raises the following issues for our review:

A. Whether the contractual doctrine of mutual mistake of fact permits the trial court to set aside a written and integrated contract for the sale of real property where the alleged mistake

- 6 -

relates not to the real estate itself but instead to a clause that the sale was contingent upon court approval?

B. Whether, in the absence of mistake, accident, or fraud, principles of contract law and 20 Pa.C.S.A. § 3360 require the trial court to compel specific performance by the estate pursuant to the terms of a written and integrated contract for the sale of real property?

Doyle's Brief at 4.

Our standard of review is as follows:

When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions.

*In re Estate of Harrison*, 745 A.2d 676, 678-79 (Pa. Super. 2000) (internal citations, quotation marks, and unnecessary capitalization omitted). An orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law. *See In re Estate of Luongo*, 823 A.2d 942, 951 (Pa. Super. 2003).

In his first issue, Doyle contends that the orphans' court erred by setting aside the Agreement of Sale based on a mutual mistake of fact. We most commonly have allowed reformation of mistaken contract provisions in cases of "scriveners' errors," where the parties' writing mistakenly failed to record their agreed-upon intentions. *See Murray v. Willistown Twp.*, 169 A.3d

84, 91 (Pa. Super. 2017). This Court has explained the doctrine of mutual mistake of fact as follows:

> The doctrine of mutual mistake of fact serves as a defense to the formation of a contract and occurs when the parties to the contract have an erroneous belief as to a basic assumption of the contract at the time of formation which will have a material effect on the agreed exchange as to either party. A mutual mistake occurs when the written instrument fails to set forth the true agreement of the parties. The language on the instrument should be interpreted in the light of subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Voracek v. Crown Castle USA Inc.*, 907 A.2d 1105, 1107-08 (Pa. Super. 2006) (citations and quotations omitted). A contract may be reformed or rescinded based on a mutual mistake if "(1) the mistake relates to an essential fact which formed the inducement to [the contract], and (2) the parties [can be] placed in their former position with reference to the subject-matter of [the contract]." *Id.* (citation omitted, cleaned up). In addition, "the mistake must not be one as to which the party seeking relief bears the risk." *Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 410 (Pa. Super. 2010) (emphasis and citation omitted). A party seeking reformation or recission based on a mutual mistake must present clear and convincing evidence of the mistake. *Smith v. Thomas Jefferson Univ. Hosp.*, 621 A.2d 1030, 1032 (Pa. Super. 1993).

Doyle asserts that he testified unimpeached at trial that he never believed that the Agreement of Sale was contingent upon court approval. Doyle maintains that, although he received two emails from the Administratrix in which she indicated her intention to petition the orphans' court for approval

of the sale of the property to him, the record is devoid of any evidence to suggest that the Agreement of Sale was contingent on such approval. Doyle points out that, within the Agreement of Sale, he specifically waived all contingencies and inspections. According to Doyle, the Administratrix's failure to include a contingency clause regarding court approval was, at most, her unilateral mistake which cannot as a matter of law afford relief under the doctrine of mutual mistake of fact.

Doyle further argues that the contractual defense of mutual mistake of fact requires that the party seeking avoidance prove that the fact at issue was essential and relates to a basic assumption on which the contract was made. Doyle asserts that a contingency clause for court approval does not relate in any way to the property or to the agreed-upon consideration and, therefore, cannot as a matter of law be deemed an essential fact or involve a basic assumption on which the contract was made. Doyle claims that even if the contingency clause can be considered an essential fact, the record does not support a finding that the presence of the contingency clause was contemplated by both parties as a condition of assent.

Doyle claims that the absence of a contingency clause for court approval did not affect the Administratrix's ability to convey the property, nor did it affect his ability to purchase the property. Doyle further contends that the absence of a contingency clause cannot be considered as a fact in existence at the time of the formation of the contract which was unknown to both parties

because the Agreement of Sale is a written and integrated document which was signed by both parties.

Finally, Doyle points out that he was not represented by counsel prior to the time he executed the contract on December 31, 2020. He argues that because the Administratrix, who was represented by counsel, drafted the Agreement of Sale, she should bear the risk of her unilateral mistake. Doyle claims that the orphans' court erred by refusing to allocate the risk of mistake to the Administratrix.

The trial court considered Doyle's first issue and concluded that it lacked merit. The court reasoned:

> The evidence, in this matter, is clear and convincing that both parties agreed that the provision for court approval would be in the Agreement of Sale.
>
> The Administratrix credibly testified that upon receiving Attorney Bonner's November 30, 2020 letter on behalf of six heirs, she wrote an email to all the heirs, including . . . Doyle, wherein it stated as follows: "2) As it seems clear some of . . . you do not want your brother Daniel to purchase the house, I will petition the court for approval." *See* R1-2; P-1; (N.T.[,] 9/13/21[,] at 42-43, 68). The Administratrix specifically testified that she knew that the sale of the property was going to be a fight because she knew a certain amount of the heirs objected to the sale to . . . Doyle and those heirs communicated those objections orally and/or in writing to her. *See* R1-2; (N.T.[,] 09/13/21[,] at 29-30). . . ..
>
> The Administratrix testified that on December 29, 202[0], she emailed . . . Doyle wherein she asked the signed Agreement of Sale to be sent to her because she wanted to attach [it] to the petition to approve the sale of real estate. (N.T.[,] 09/13/21[,] at 21-22, 40); *see* P-2. In the December 29, 202[0] email, the Administratrix stated "Hello. I was really hoping to file my petition to approve the sale of the house this week. But we can't file the petition without the [A]greement of [S]ale . . . .." *Id*. The

- 10 -

Administratrix testified that she also spoke with . . . Doyle on the phone where she specifically discussed the need for him to sign the Agreement [of Sale] for her to attach it to the petition for the approval of the [A]greement of [S]ale. *Id*. at 21. The Administratrix believed that the Agreement of Sale was contingent upon the orphans' court approval. (N.T.[,] 09/13/21[,] at 23). The Administratrix testified that she did not know that the court approval clause was not in the Agreement of Sale until . . . Doyle's counsel informed her in approximately May 2021. *Id*. at 47.

[] Doyle testified that he thought that he received the petition for approval of the sale of real estate filed on January 21, 202[1]. (N.T.[,]09/13/21[,] at 57-58). As to the November 30, 2020 email from the Administratrix discussing the Agreement being submitted to the orphan[s'] court, . . . Doyle testified that[:]

> So I was under the impression, [the Administratrix] just wanted the court to be aware of the fact that there was some contention from certain siblings of mine. That they did not want me to buy the home for whatever reason.

*Id*. at 52-53. . . . Doyle further testified that his understanding [of the] Administratrix's representations regarding the filing of a petition regarding the sale was[ as follows:]

> I believe that [the Administratrix] was going to the court so that the court could rubber stamp it. To say that hey, we entered into an agreement . . . .. Threatening litigation and I believe that she just wanted to make sure that the court knew she was being very fair and straight forward [*sic*] with her actions which she was.

*Id*. at 64. It is clear from the evidence that the Administratrix and . . . Doyle intended to include a court approval clause for the sale of the property. The evidence also shows that both parties thought that the clause was included. (N.T.[,] 09/13/21[,] at 21-22, 40,42-43); *see* R 1-2, P-2.

Even if the mistake is unilateral, if the non-mistaken party knows or has reason to know of the unilateral mistake, and the mistake, as well as the actual intent of the parties, is clearly shown, relief will be granted to the same extent as a mutual

mistake. ***Twin City*** [***Fire Ins. Co., v. Pittsburgh Corning Corp.***, 813 F. Supp. 1147, 1150 (W.D. Pa. 1992)] (citing ***Line Lexington Lumber & Millwork Co., Inc. v. Pennsylvania Publishing Corp., et al***., 301 A.2d 684, 687 (Pa. 1973)); ***Lanci v. Metropolitan Ins. Co.***, 564 A.2d 972, 974 (Pa. Super. []
1989); ***RegScan, Inc. v. ConWay Transp. Services, Inc.***, 875 A.2d 332, 340 (Pa. Super. [] 2005). A mistake by one party, and knowledge of the mistake by the other, should justify relief as fully as a mutual mistake. ***Twin City***, ***supra*** (citing ***Line Lexington***, ***supra*** at 687-688). Where the first party knows what the other party actually intended, the instrument will be reformed to conform to that intention. ***Id***.

The Administratrix credibly testified that she was not aware that the clause for court approval was missing from the Agreement of Sale until May of 2021. Even if . . . Doyle argued that it was a unilateral mistake, since . . . Doyle clearly testified that he knew the clause of court approval would be included in the Agreement of Sale, relief should be granted as if it was a mutual mistake. . . . [T]he Agreement of Sale should only be enforced as it was intended to be written. Therefore, the orphans' court properly granted the petition to approve the sale of real estate and set aside the Agreement of Sale between the Administratrix and . . . Doyle.

[T]he law recognizes that mistakes happen in drafting contracts. It provides that when the parties have come to an agreement as to the terms of that contract, the contract as agreed to should be enforced.

The evidence, in this matter, is clear and convincing that the understanding between the Administratrix and . . . Doyle as to their intention was to include the court approval term in the Agreement of Sale. Both parties mistakenly believed that the approval condition was included in the contract when it was executed. . . . [T]he Agreement of Sale should only be enforced as it was intended to be written. This contract could not be enforced as written because the approval condition was not included in the Agreement of Sale. Therefore, the orphans' court properly granted the petition to approve the sale of real estate and set aside the Agreement of Sale between the Administratrix and . . . Doyle.

Trial Court Opinion, 3/28/22, at 24-28 (unnecessary capitalization and some citations omitted).

The orphans' court further determined that the presence of an integration clause in the Agreement of Sale was irrelevant, as the evidence established that both parties acknowledged that they agreed to a term that was mistakenly left out of the Agreement. *Id*. at 28.

Regarding the risk of a mistake, the orphans' court determined that Section 154(b) of the Restatement (Second) of Contracts[5] did not apply because there was no agreement between the parties as to the allocation of risk. *Id*. at 30. The court further determined that because both parties believed that the court approval clause was included in the Agreement of Sale, the there was no need to require the Administratrix to bear the risk of loss. *Id*. at 30-31.

_____

[5] Section 154 of the Restatement (Second) of Contracts provides:

§154. When a Party Bears the Risk of a Mistake

A party bears the risk of a mistake when (a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Restatement (Second) of Contracts § 154 (1981).

We discern no abuse of discretion or legal error by the orphans' court. The record amply supports its determination that the Agreement of Sale should be reformed due to a mutual mistake by the parties. As of November 30, 2020, both the Administratrix and Doyle knew that the Administratrix intended to petition the orphans' court for approval of the sale of the property to Doyle because the sale was contested by several of Decedent's heirs. When Doyle executed the Agreement of Sale on December 31, 2020, he did so knowing that the document he was signing would be attached to a petition to the orphans' court seeking approval of the sale of the property to him. Thus, the record is clear that, before the Agreement of Sale was executed, both parties understood that the sale of the property to Doyle was disputed and contingent on the approval of the orphans' court. *See Voracek*, 907 A.2d at 1107-08 (explaining that a mutual mistake occurs when the written instrument fails to set forth the true agreement of the parties); *see also Murray*, 169 A.3d at 91 (explaining that reformation of mistaken contract provisions is commonly permitted in cases of "scriveners' errors," where the parties' writing mistakenly failed to record their agreed-upon intentions).

Moreover, as explained above, a contract may be reformed or rescinded based on a mutual mistake if the mistake relates to an essential fact which formed the inducement to the contract, and (2) the parties can be placed in their former position with reference to the subject-matter of the contract *See Voracek*, 907 A.2d at 1107-08. Here, reformation of the Agreement of Sale

- 14 -

was appropriate because the mistake related to the absence of a court approval clause and Doyle was induced to execute the Agreement of Sale so that it could be presented to the orphans' court for approval. Further, the parties can be placed in their former position with reference to the property (*i.e.*, the Administratrix may offer the property for sale and Doyle may again seek to purchase the property, albeit on the open real estate market).

Finally, the orphans' court was required to interpret the language of the Agreement of Sale "in the light of subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." ***Id***. Here, the sale of the property was not a private transaction between two independent parties. Instead, the parties consisted of the Administratrix of the Decedent's estate and one of the eleven heirs to whom the Administratrix owed a fiduciary duty to liquidate the Decedent's estate for purposes of distribution to all the heirs. The subject matter of the Agreement of Sale was an asset of Decedent's estate, and the objective of the agreement was to liquidate an estate asset so that the proceeds could be dispersed among the eleven heirs. The conditions existing when the Agreement of Sale was executed by Doyle on December 31, 2020, were such that both parties to the Agreement of Sale understood that the Administratrix intended to petition the orphans' court for approval of the sale because several of the heirs contested the sale on the basis that the sale price was below the fair market value of the property. Thus, the subject matter and purpose of the Agreement of Sale,

as well as the conditions existing at the time it was executed by Doyle, further support the orphans' court's determination that the Agreement of Sale should be reformed due to a mutual mistake. Accordingly, Doyle's first issue merits no relief.

In his second issue, Doyle argues that the Administratrix breached the Agreement of Sale by failing to convey the property to him, and that he was entitled to specific performance of the Agreement of Sale. The orphans' court determined that the issue was meritless because the May 12, 2021 order denying the petition for approval of sale of the property to Doyle invalidated the Agreement of Sale by operation of law. ***Id***. at 43. The orphans' court explained that it "could not, therefore, order specific performance for an invalid agreement of sale." ***Id***.

Based on our determination that the orphans' court did not err or abuse its discretion by reforming the Agreement of Sale to include a court approval clause, there was no enforceable Agreement of Sale following the entry of the orphans' court's May 12, 2021 order denying the petition to approve the sale of the property to Doyle. ***See Murray***, 169 A.3d at 93 (holding that the appellant was not entitled to specific performance of the original contract where the trial court properly reformed the contract). Accordingly, Doyle's second issue is moot.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2023